## Shovlin et al. *versus* Commonwealth.

1. When an officer is empowered by law to arrest without warrant, he is not in every case bound before making the arrest to give the party to be arrested clear and distinct notice of his purpose to make the arrest, and also of the fact that he is legally qualified to make it.

2. Where the offender in question is openly and notoriously engaged in breaking the law, as for example, where he is maintaining a gambling table in a public place, it is sufficient for the officer to announce his official position and demand a surrender. If this is refused, the officer is not liable to indictment for assault by reason of the fact that he used force to secure his prisoner.

April 17, 1884. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN, and CLARK, JJ.

ERROR to the Court of Quarter Sessions of *Luzerne county:* Of January Term, 1884, No. 167.

Indictment against Charles Shovlin, Charles W. Tammany and Hiram Rhoades, containing two counts, viz., (1) aggravated assault and battery; (2) assault and battery on one T. E. Bowser.

On the trial, before WOODWARD, J., the following facts appeared: At a meeting of the Lee Park Trotting Association, held in June, 1883, one Bowser secured the privilege of putting up a gambling apparatus in the Park. Complaint of this fact was made to some of the constables of Wilkesbarre, among others to C. W. Tammany, who requested the officers of the Park to have the gambling stopped, and subsequently, upon learning that nothing had been done, applied to an alderman for a warrant for the arrest of Bowser, and was informed by said alderman, that the statute authorized his arrest without a warrant. He then secured the assistance of two other constables, Shovlin and Rhoades, and they went to the gambling tables, and Tammany announced himself as a constable, showed his star, and told Bowser to surrender his machinery, and consider himself a prisoner. Bowser refused, and upon Tammany's attempting to put handcuffs upon him, a fight ensued, in which Bowser was severely bruised by a billy, and the butt of a revolver in the hands of one of the constables, and some of the money from the tables was taken by the constables. Bowser escaped.

The constables were arrested upon information of one W. J. Harvey, the superintendent of the Park, charged with an aggravated assault and battery, and the prosecutor further alleged that the only purpose of the constables in making the raid was to secure gain for themselves.

The court charged the jury, inter alia, as follows: [If you

10 OUTERBRIDGE.—24.

[Shovlin *v.* Commonwealth.]

believe the witnesses for the Commonwealth, there was here an attack made upon this injured man which would seem to have been unnecessarily violent, although made by officers of the law, and the defendants may be convicted.] (*First* assignment of error.) If, on the contrary, you believe the evidence of the defendants and their witnesses that they exercised no more force than was necessary to vindicate the law and protect themselves from injury, they should be acquitted. Or if after a calm, conscientious, and full review of all the evidence on both sides, you still feel a reasonable doubt in regard to the subject, the defendants are entitled to the benefit of that, and should be acquitted. . . . . .

[If an officer proceeds to make an arrest for an offence committed under his eye, without a warrant, he is bound to give to the party to be arrested clear and distinct notice of his purpose of making the arrest, and also of the fact that he is legally qualified to make it, or is an officer of the law; and failure to do this, on the part of the officer, may make him guilty of an assault upon the person arrested, while under other circumstances—if proper notice had been given—he would not be guilty of an assault; and in this connection we may say to you further, that something more is necessary than merely to show a star or badge, insignia of office.] (Second assignment of error.)

Verdict guilty on the second count. The court sentenced Shovlin to pay $50 and costs, and Tammany and Rhoades each to pay $100 and costs. The defendants took this writ, assigning for error the portions of the charge above inclosed in brackets.

*T. R. Martin, John T. Lenahan* and *Q. A. Gates*, for plaintiffs in error.—Bowser was engaged in the commission of an offence which rendered him liable to arrest on view of an officer, and hence no notice was necessary: People *v.* Pool, 27 Cal., 573; 3 Wharton Crim. Law, § 2924; Rex *v.* Davis, 7 C. & P., 787; Act March·31, 1860, § 60; Commonwealth *v.* Cooley, 6 Gray, 350; The State *v.* Townsend, 5 Harring. (Del.), 487, 488; Arnold *v.* Steeves, 10 Wend., 514. But conceding that a criminal detected by a constable in the actual and flagrant violation of our laws against certain kinds of gambling, cannot be legally arrested without having clear and distinct notice from the officer of his intention to arrest him, it is not necessary as stated by the learned Judge that something more in the way of giving notice to the party to be arrested, should be done, than by showing a badge, or star, insignia of offices: 1 Bishop Crim. Procedure, § 192; 3 Wharton's Crim. Law, § 2924.

*John McGahren*, District Attorney (*Henry W. Palmer* with him), for the Commonwealth, defendant in error.—The authorities relied on by the plaintiff in error only affirm the principle that a *known* officer of the law, acting in his own district, need not show his authority.

A party has the right to resist unless the officer and cause of arrest are known to the offender: Wolf *v.* State, 19 Ohio St., 248; Commonwealth *v.* Hewes, 1 Brewster, 348. But an officer, if resisted, is not bound to exhibit his warrant. If not resisted, and there is no well-grounded reasons to expect resistance or escape, he should, on request, exhibit his warrant: Commonwealth *v.* Hewes, 1 Brewster, 348.

Mr. Justice STERRETT delivered the opinion of the court, October 6, 1884.

After prohibiting various forms of gambling, prescribing penalties therefor, etc., our Crimes Act of March 31st, 1860, declares, "It shall and may be lawful for any sheriff, constable or other officer of justice, with or without warrant, to seize upon, secure and remove any device or machinery of any kind, character or description whatsoever, used and employed for the purpose of unlawful gaming as aforesaid, and to arrest, with or without warrant, any person setting up the same."

It is not seriously questioned that Bowser, the person on whom the alleged assault and battery was committed, was openly engaged in violating both the letter and spirit of the Act; indeed, it is very evident from the testimony that plaintiffs in error were as fully authorized, by the section above quoted, to seize the gambling apparatus and arrest the proprietor thereof, as if they had been armed with a warrant for that purpose. The question, therefore, was not whether they were guilty of an assault and battery in making the arrest, but whether they were guilty of the offence for which they were indicted by reason of their having used more force than was reasonably necessary under the circumstances; and, in the main, that question was fairly submitted to the jury.

The first assignment of error is not sustained. In charging as therein specified, the learned Judge expressed a decided opinion as to the effect of the Commonwealth's testimony; but, the jury could not have been unduly influenced thereby, for the reason that in the very next sentence he said to them, "If, on the other hand, you believe the evidence of the defendants and their witnesses, that they exercised no more force than was necessary to vindicate the law and protect themselves from injury, they should be acquitted." The question of fact was thus left to the jury without anything more than a mere

expression of opinion as to the effect of the testimony if believed.

One of the questions involved in the second specification is whether an officer, authorized to arrest without warrant, is bound, before doing so, "to give the party to be arrested clear and distinct notice of his purpose to make the arrest, and also of the fact that he is legally qualified to make it;" in other words, may the officer be convicted of assault and battery for making the arrest without first giving such notice? While, in most cases, it may be prudent for the officer to give the notice before making the arrest, it is going too far to say, in effect, that he is required to do so; and therefore we think the learned Judge erred in charging the jury as he did on that subject. In considering the question, as presented by the undisputed facts of this case, it is fair to assume that the constable and his assistants, plaintiffs in error, were authorized to make the arrest; that the authority with which the constable was expressly clothed by the Act was at least equivalent to a warrant. It is doubtless the duty of an officer who executes a warrant of arrest to state the nature and substance of the process which gives him the authority he professes to exercise; and if it is demanded, to exhibit his warrant, that the party arrested may have no excuse for resistance: 1 Chit. C. L., 51. On the other hand, as is said in Commonwealth *v.* Cooley et al., 6 Gray, 350, 356, "the accused is required to submit to the arrest, to yield himself immediately and peaceably into the custody of the officer, who can have no opportunity, until he has brought his prisoner into safe custody, to make him acquainted with the cause of his arrest, and the nature, substance and contents of the warrant under which it is made. These are obviously successive steps. They cannot all occur at the same instant of time. The explanation must follow the arrest; and the exhibition and perusal of the warrant must come after the authority of the officer has been acknowledged, and his power over his prisoner has been acquiesced in." The general principle, thus stated, is equally applicable to arrests, without warrant, under authority of the statute. The second assignment of error is sustained.

> Judgment reversed, and it is ordered that the record, with copy of the foregoing opinion, setting forth the cause of reversal, be remitted to the Court of Quarter Sessions of Luzerne county for further proceeding.