## Commonwealth *v.* Long.

*Criminal law—Involuntary manslaughter—Shooting an escaping burglar—Justifiable and excusable homicide.*

In Pennsylvania if homicide is justifiable or excusable there must be an entire acquittal.

When a party may be lawfully arrested for felony, and he knowing the cause flies, so that he cannot be taken otherwise than by killing him, the constable pursuing him will be justified in killing him; or a private person will in like manner be justified if he can prove that the deceased was actually guilty of a felony.

Where a householder sees a burglar escaping from his house and pursues him on to the porch of the house, and when he is about twenty-five feet away from the burglar, and thinking that the latter is about to escape, and that notice is useless, shoots at his legs so as to maim or mark him, and as the shot is fired the burglar jumps from the porch and receives the charge in his back, resulting in his death, and the householder is arrested and indicted for manslaughter, it is error for the court to refuse a request to charge as follows: "If the jury find under the law and the evidence that the shooting of the deceased in the leg would have been justifiable, and if they further find that by a pure accident and without any carelessness on the part of the defendant, the shot produced death by entering a vital part of the deceased, then the defendant's action was equally justifiable."

Argued May 13, 1901. Appeal, No. 276, Oct. T., 1900, by defendant, from judgment of O. & T., March T., 1900, Lebanon Co., on verdict of guilty of involuntary manslaughter in case of Commonwealth v. David S. Long. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ. Reversed.

Indictment for manslaughter.

At the trial it appeared that on the night of February 11, 1900,

the defendant, David S. Long, a tenant farmer residing in North Cornwell township, shot and killed John Becker, a burglar, while the latter was escaping from defendant's house. The circumstances of the killing are fully detailed in the opinion of the Superior Court.

The defendant presented the following point:

2. In arresting John Becker, the defendant had the right to use such force as was necessary to accomplish the arrest, and if, in using the force he did, he simply intended to maim the deceased by shooting him in the leg, it was a justifiable homicide, and the defendant should be acquitted. *Answer :* Refused and not read. [1]

4. If the jury find that the deceased had escaped from the house, and was about effecting his final escape by jumping off the porch, and there was no time within which to give the deceased notice of Long's purpose to make the arrest, then Long was justified in attempting to maim the deceased by shooting him in the leg without notice. *Answer :* Refused. [2]

5. If the jury believe that Becker was guilty of burglary, and Long intended to shoot him in the leg as he was about making his final escape for the purpose of effecting his arrest, and Becker jumped off of the porch at that moment and thus lowered his body so that he was hit at a vital spot, and Long had no time to give notice before he shot, then the killing was justifiable and the defendant must be acquitted. *Answer :* Refused. [3]

6. If the jury find under the law and the evidence that the shooting of the deceased in the leg would have been justifiable, and if they further find that by a pure accident and without any carelessness on the part of the defendant the shot produced death by entering a vital part of the deceased, then the defendant's action was equally justifiable. *Answer :* Refused. [4]

Verdict of guilty of involuntary manslaughter upon which judgment of sentence was passed that the defendant pay a fine of $5.00 and undergo an imprisonment of six months.

*Errors assigned* were (1–4) above instructions, quoting them.

*Thomas H. Capp* and *John H. Louser*, with them *J. M. Funck*, for appellant.—The right of private persons to arrest felons for

offenses committed within view is clearly established : 4 Blackstone's Comm. 180 ; 1 East's P. C. 298 ; Brooks v. Com., 61 Pa. 352.

The law under the circumstances of this case will not judge the defendant harshly, criticise him closely or be astute in searching for a line of demarcation : Ruloff v. The People, 45 N. Y. 213 ; McCarthy v. DeArmit, 99 Pa. 63 ; Shovlin v. Com., 106 Pa. 369.

The broad distinction between arrests made by an officer and by a private person on suspicion of felony, is this, that a private person, in order to be justified, must prove that a felony has actually been committed, while an officer need not: Beckwith v. Philby, 6 B. & C. 635 ; Rohan v. Sawin, 5 Cush. 281.

*E. E. McCurdy*, district attorney, and *George B. Woomer*, for appellee.

OPINION BY ORLADY, J., July 25, 1901.

The defendant was found guilty of involuntary manslaughter and the assignments of error relate only to the answers given by the trial judge to points submitted by the defendant. The defendant was a tenant farmer and his family consisted of his wife, who was an invalid, a daughter aged eighteen years, and three small children. On Sunday evening, February 11, 1900, about 8 o'clock, he retired to his bedroom on the second floor with two of the smaller children and was sleeping with them, when about 11 o'clock he was awakened by calls from his wife ; on going to her bedroom downstairs he was informed by her that there was somebody in the house. The defendant did not own any firearm, but with the aid of a young man who was visiting the daughter, a shot gun belonging to a hired man was taken from its case, put together, and loaded with two shells. The defendant, his wife, daughter and Homer Kleinfelter, the visitor, were in the room together when they heard some one walking around upstairs and later down the stairs and into a room near the one where they were. The wife and daughter remonstrated with the defendant about going out of the room lest he might be shot. A lantern was procured and Long went out of the front door of the house just as the intruder jumped from an open window and ran over the porch.

The defendant testified that he thought the person a robber, and when about twenty feet away from him he shot in the direction of the legs of the fleeing person, who at the moment the gun was fired jumped from the porch and the charge of shot entered his back near the shoulder blade and killed him. He was identified as John Becker.

The first, second and third assignments of error relate to the right of the defendant to maim the deceased by shooting him in the leg, without notice, so as to effect his arrest or to mark him in such a way that he could be subsequently arrested and identified. These points were refused by the court without reading them to the jury and it is urged that the propositions contained in them were fully and adequately considered in the general charge. The learned trial judge said, "Was there a felony committed? If there was, it was the defendant's duty, if he could, to arrest the felon. If in attempting to arrest the felon he came in contact with him in such a way that he was in immediate peril of his life or of great bodily harm, then he had a right to kill Becker; and if not, and he attempted simply to mark him and not to arrest him, then we say to you that he had no right to mark him, and if his intention was not to arrest him and death followed from it, then he would be guilty of manslaughter. If you find that he intended to arrest him, that is, stop him and had not given him the warning that he should have given, and that Becker, under the circumstances, had no warning that he was about to be arrested by any one and if there was no attempt made by the defendant to arrest except by shooting him, then we say to you, you may consider the other question, that is, whether he attempted to do what under the law he had a right to do in an unlawful manner,—that would be involuntary manslaughter." This part of the charge of the court was given upon the assumption that the jury would adopt as true the testimony of the defendant, his wife, daughter, and Kleinfelter—that Becker was a fleeing felon and that the defendant shot at him, intending to maim and stop him. The commonwealth admits that "the points in the first, second, and third assignments are substantially correct statements of the law and might have been affirmed. But they are so expressed that the jury might have been misled in their application of the case, unless they were somewhat amplified and

explained." The charge of the court did not cover the propositions urged by the defendant, which should have been considered at greater length than by a refusal without reading. The charge as such is not assigned for error, but an additional and further contention, not adequately explained to the jury, was raised, namely, that in an honest attempt to arrest a fleeing felon about to make his final escape, and who suddenly and unexpectedly changed his position, the defendant delivered the wound where it was not intended.

The fourth assignment raises a yet more serious error. The defendant's sixth point which was refused without being read to the jury was as follows : " If the jury find under the law and the evidence that the shooting of the deceased in the leg would have been justifiable, and if they further find that by a pure accident and without any carelessness on the part of the defendant the shot produced death by entering a vital part of the deceased, then the defendant's action was equally justifiable,"

The court instructed the jury that if a felony had been committed it was the defendant's duty to arrest the felon if he could. The defense was that Long did not raise the butt of the gun to his shoulder but aimed at the legs to maim the fleeing felon so that he could be taken into custody, or as the defendant has expressed it a number of times, " I shot to stop him because he was in my house ; I shot to stop him to mark him, to find out who he was ; to stop him, I thought it was a robber and he went through my house ; so I could find out who it was ; I could not give him notice so as to stop him, he would have gotten behind the house or behind the trees a few feet distant from the house ; he was going away from me on a dead run ; he was very near twenty-five feet away ; right at the end of the porch and jumped off just as the gun went off ; then I tried to shoot him in the legs. I did not know whether he would shoot me or I would shoot him." The burglar effected his entrance into the house through a window, and his presence in several rooms was shown by his footprints, tobacco stains, an opened bureau and disturbed clothing. The second part of the point is based on the whole burden of the defense—that the death of Becker was a pure accident without carelessness on the part of the defendant. If the jury would believe that, it was their duty to acquit, and it was the duty of the court to so instruct them. This feature

was not adverted to in the general charge but was clearly raised by the sixth point submitted by the defendant.   The court having refused to charge as requested in the defendant's sixth point, we must assume that the jury would have found the facts as stated in the point, which facts are not covered in the general charge: King v. Thompson, 87 Pa. 365.

If Becker had been shot in the leg as intended by Long no grade of homicide would have been committed.   The sixth point was predicated on the defense which made out the commission of felonious burglary, and that the felon was fleeing from the dwelling immediately thereafter knowing that the pursuer was close upon him.   It was contended that a notice to stop would have been without avail, as a moment's delay would have assured his escape at least temporarily, around the house or among the trees and that the intended act was to stop him in order to prevent his escape or to mark him for identification and was not to kill.   The unexpected change in the position of Becker's body due to his jumping from the porch, caused the shot to take effect in his body instead of in his legs. If the jury would believe the defendant and his four witnesses as to these facts (and they would have been warranted in so finding them), and further, that the gun was discharged in a careful and heedful manner, they could find that it was excusable homicide by misadventure or justifiable: State v. Roane, 2 Devereux, 58; State v. Rutherford, 1 Hawks, 457.   The defendant was entitled to have that theory submitted to the jury in order to excuse or justify the act.

In regard to this a distinction existed in England which does not exist in this country.   There, the man who had committed an excusable homicide forfeited his goods and chattels, while he who had a justification, forfeited nothing.   Here, whether the homicide be justifiable or excusable, there must be an entire acquittal: Commonwealth v. Selfridge, tried before Chief Justice PARKER of Massachusetts in 1805.   The technical distinction is stated in Pond v. The People, 8 Mich. 150, but it is a distinction without a difference, and one too nice and refined for the comprehension of juries.   We find confusion on the part of judges and text writers in regard to it: Commonwealth v. Riley, Thatcher's Criminal Cases, 471; Monroe v. The State, 5 Ga. 85; 1 Wh. Crim. L. sec. 308.

When a man kills another in an honest error of fact, murder is out of the question. The only issue is, was this error negligent or nonnegligent? If negligent, the killing is man-. slaughter; if nonnegligent, excusable homicide: 1 Wh. Crim. L. secs. 492, 467, and cases cited.

In Levett's Case, Cro. Car. 538, 1 Hale, P. C. 42, the defend-- ant was in bed and asleep when his maid servant, who had hired A., the deceased, to help her do her work, thought, as she was going to let A. out about midnight, that she heard thieves breaking open the door, upon which she ran upstairs to the defendant, her master, and informed him thereof. Suddenly aroused, he sprang from his bed and ran downstairs with his sword drawn, the deceased hiding herself in the buttery lest she should be discovered. The defendant's wife, observing some person there, and not knowing her, but conceiving her to be a thief, cried out: "Here are they who would undo us;" and the defendant, in the paroxysm of the moment, dashed into the buttery, thrust his sword at the deceased and killed her. The defendant was acquitted under the express instructions of the court, and the case has remained unquestioned for 200 years, and in New York and Pennsylvania in particular, after very careful examination, has been solemnly affirmed: 1 Wh. Crim. L. sec. 38. The necessity for giving notice to the fleeing felon, and the character of the notice, depends entirely upon the special facts attending the arrest. While in most cases it may be prudent for the officer to give the notice before making the arrest, it is going too far to say in effect that he is required to do so: Shovlin v. Commonwealth, 106 Pa. 369. A warning or notice of arrest might, in some cases, be imperatively required, in others it would be of no avail, and not necessary in order to protect the officer or the private person who immediately pursues a known felon. Whether a notice should have been given by Long was a fact for the jury, and was a proper subject for instruction under the fourth point (second assignment) which was not covered in the general charge.

"One who is seen to commit a felony must be arrested on the spot or suffered to escape. So, though not seen, yet if known to have committed felony, and thereupon pursued, he may be arrested, with or without warrant, by any person. These are principles of common law essential to the welfare of

society, and not altered or impaired by the constitution: " 6 Binney, 318; Wakely v. Hart, 6 Binney, 316. " When a party may be lawfully arrested for felony, and he knowing the cause, flies, so that he cannot be taken otherwise than by killing him, the constable pursuing him will be justified in killing him; or a private person will, in like manner, be justified, if he can prove that the deceased was actually guilty of a felony : " 1 Archbold's Pr. & Pl. 29; 2 Am. & Eng. Ency. of Law (2d ed.), 884, and cases there cited.

" On the commission of a felony, a private person making fresh pursuit on reliable information may arrest the felon. It is the law not only of England, but of this state, any private person that is present when a felony is committed is bound by the law to arrest the felon on pain of fine and imprisonment if he escape through the negligence of the standersby, and they may justify the breaking open the doors upon following such felon; and if they may kill him, provided he cannot be otherwise taken, it is justifiable, though if they be killed in endeavoring to make such arrest, it is murder: " Brooks v. Commonwealth, 61 Pa. 352.

There was no evidence to justify a finding that Becker did not know he was about to be arrested. Every reasonable inference to be drawn from his actions conclusively proved that he knew he was being pursued and that his hurried flight was for the very purpose of evading arrest.

The fourth assignment of error is sustained, the judgment is reversed and a venire facias de novo awarded.