J-A06042-25

2025 PA Super 63

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| ABUBAKARR SOW | : | |
| | : | |
| Appellant | : | No. 1405 EDA 2024 |

Appeal from the Judgment of Sentence Entered April 30, 2024
In the Court of Common Pleas of Monroe County Criminal Division at
No(s): CP-45-CR-0000749-2023

BEFORE: PANELLA, P.J.E., LANE, J., and STEVENS, P.J.E.[*]

OPINION BY STEVENS, P.J.E.:               **FILED MARCH 17, 2025**

Appellant, Abubakarr Sow, appeals from the judgment of sentence entered in the Monroe County Court of Common Pleas on April 30, 2024. We affirm.

The relevant facts, as summarized by the trial court, are as follows:

Corporal George Dobson of the Stroud Area Regional Police was on patrol in his marked police cruiser on North Fifth Street, in Stroud Township on October 9, 2022, at approximately 0316 hours when he came upon an automobile parked in the roadway on North Fifth Street with its hazard lights on. As he approached the stopped vehicle, Corporal Dobson observed Defendant Abubakarr Sow standing on the roadway behind the open door of his vehicle. The vehicle was running and there was a stream of steaming liquid flowing across the roadway from where Mr. Sow was standing. Corporal Dobson activated his warning lights and Mr. Sow then sat in the driver's seat and turned the engine off. The officer smelled the odor of alcohol and noticed signs that Mr. Sow may have been under the influence and incapable of safe

_____

[*] Former Justice specially assigned to the Superior Court.

driving. He conducted field sobriety tests and then arrested Mr. Sow for driving under the influence of alcohol.

The officer then drove Mr. Sow to the DUI Processing Center at the Monroe County Correctional Facility where he read Mr. Sow the PA DL-26 form advising him of his rights and requested a blood draw, which Mr. Sow refused. [N.T., 2/15/24, at] 51-53. Mr. Sow was then transported to police headquarters, while the officer sought a search warrant for a sample of Mr. Sow's blood. He obtained the warrant, drove Mr. Sow back to the DUI Processing Center and again read him the PA DL-26 form and told him that he had obtained a warrant to seize a blood sample from him. He showed Mr. Sow the warrant, but did not let him read the warrant or the supporting affidavit. Mr. Sow again refused to give a blood sample. Rather than forcefully seizing the blood sample, Corporal Dobson charged him with Obstruction of the Administration of Law.

Corporal Dobson testified about his request that Mr. Sow comply with the search warrant after he was taken to the DUI Center the second time:

> Q: (Attorney Kroeckel) Okay. You had that signed and got it back. What did you do then?
>
> A: (Corporal Dobson) So again, Mr. Sow was explained his rights. I believe I reread the DL 26 form to him which is not a requirement, but I did that out of courtesy to refresh his memory. And then I also provided him with a visual copy. I didn't hand it to him, but I showed him that I had a signed copy from the Judge of this search warrant, and explained that being that it was a Court order he could be facing initial penalties.
>
> Q: Okay. And what did he do?
>
> A: Ultimately, he still refused.

[N.T., 2/15/24, at] 55. On cross-examination, Corporal Dobson testified as follows:

> Q: (Mr. Closs) Okay. And I think you alluded to this earlier, but you were saying that you showed Mr. Sow

a copy of it. Does that mean you held it up for him to see?

A: (Corporal Dobson) Yes. I would have either physically shown it to him or read it. I don't specifically recall, but I explained what paperwork I had.

Q: Right. And when you said that you were limiting what your statement was that you did one of those things that's because Mr. Sow had asked you to actually see it, and you declined to hand it to him. Correct?

A: Correct.

[N.T., 2/15/24, at] 87. Mr. Sow testified about the officer's request for his blood draw:

Q. Did the officer ask you for consent to the blood draw?

A. He told me he had an order to take my blood. And I asked him to let me see and he refused. He said he was not going to give me the paper. I asked him numerous times. He was holding a paper for sure. But, I wanted to see it and he said he wasn't going to show it to me which he stated that he refused to give it to me to see.

Q. And why did you want to see the paper?

A. Due to my migrating to America, I read the Constitution in order for me to become a US citizen. And it stated it stated there on my, I think, I believe my 4th Amendment that I have the right to see a warrant from an order.

[N.T., 2/15/24, at] 118-19.

Mr. Sow takes issue with the court's denial of his request to give an instruction to the jury concerning the warrant. He filed a written request for the court to give the following charge:

**Point for Charge by Defense, #1**

> "It is the duty of an officer who executes a warrant of arrest to state the nature and substance of the process which gives him the authority he professes to exercise; and if it is demanded, to exhibit his warrant, that the party arrested may have no excuse for resistance." ***Shovlin v. Com.***, 106 Pa. 369, 372 (Pa. 1884).

*Sow's Proposed Charge to the Jury*, [N.T., 2/15/24, at] 146-53, 211.

[The trial court] denied this requested charge, and instead gave the Obstruction charge taken from the Pennsylvania Suggested Standard Jury Charge, 15.5101 in [the] initial instructions and again when the jury had a question:

> You have also asked for information about the obstruction of the administration of law or other governmental function. And so, I'm going to read that instruction as well. Obstructing administration of law or other governmental function. Mr. Sow has been charged with obstructing a governmental function. To find him guilty of this offense, you must find that the following elements have been proven beyond a reasonable doubt.
> First, that the Defendant obstructed or impaired a governmental function specifically the execution of a lawful and valid search warrant. Generally speaking, a person cannot commit this crime unless he or she uses means that affirmatively interfere with governmental functions. Thus, you cannot find the Defendant guilty if you find that he merely tried to avoid complying with the law without affirmatively attempting to interfere with the government function.
> Second, that the Defendant did so by unlawful physical interference or obstacle.
> And third, that the Defendant did so intentionally that is he acted with the conscious object of causing such obstruction or impairment.

*Court's Final Charge*. [N.T., 2/15/24, at] 214-215.

Tr. Ct. 1925(a) Op. at 2-5 (citations and paragraph spacing modified).

At the conclusion of the trial, Appellant was convicted on Count 1, Obstruction of Administration of Law or other Government Function,[1] a misdemeanor of the second degree; and Count 3, DUI general impairment,[2] incapable of driving safely, an ungraded misdemeanor. The jury found him not guilty of indecent exposure and possession of drug paraphernalia. He was found guilty by the court of four summary offenses after the jury rendered its verdict. Appellant was sentenced to five days to six months' incarceration on the DUI charge to be followed by one year probation on the obstruction charge.

On May 16, 2024, Appellant filed a timely notice of appeal from the trial court's April 30, 2024, sentencing order. On May 17, 2024, the court ordered Appellant to file a Rule 1925(b) concise statement. Appellant filed his concise statement on May 22, 2024. This appeal follows.

Appellant raises one issue for our review:

> Whether a new trial should be granted and whether the trial court erred when it failed to instruct the jury that the police officer was required to, upon the Appellant's request, show him the search warrant prior to his attempt to execute that search warrant?

Appellant's Br. at 4.

Our standard of review in regard to a trial court's decisions on jury instructions is well-settled: "[O]ur standard of review when considering the

_____

[1] 18 Pa.C.S.A. § 5101.
[2] 75 Pa.C.S.A. § 3802(a).

denial of jury instructions is one of deference—an appellate court will reverse a court's decision only when it abused its discretion or committed an error of law." *Commonwealth v. Galvin*, 985 A.2d 783, 798-99 (Pa. 2009). Further, "[t]the trial court is not required to give every charge that is requested by the parties and its refusal to give a requested charge does not require reversal unless the Appellant was prejudiced by that refusal." *Commonwealth v. Sandusky*, 77 A.3d 663, 667 (Pa. Super. 2013) (quoting *Commonwealth v. Thomas*, 904 A.2d 964, 970 (Pa. Super. 2006).

Appellant's proposed jury instruction was a one-sentence quote from an 1884 Pennsylvania case, *Shovlin v. Commonwealth*, 106 Pa. 369 (1884). The trial court stated, "I did not give the charge offered by the defense, because I did not believe it was an accurate statement of the law to say that a defendant has the right to inspect a search warrant before the police can enforce the warrant." Tr. Ct. Op. at 5. We agree that the dicta from *Shovlin* that Appellant requested be read as a jury instruction does not accurately state the law, nor does it fairly portray our Supreme Court's holding in *Shovlin*. However, we affirm on the basis that the *Shovlin* quote was entirely irrelevant to Appellant's argument given the elements of the offense and the facts in the case.

Appellant was convicted of obstructing administration of law or other governmental function which relevantly provides:

> A person commits a misdemeanor of the second degree if he intentionally obstructs, impairs or perverts the administration of

- 6 -

law or other governmental function by force, violence, physical interference or obstacle, breach of official duty, or any other unlawful act[.]

18 Pa.C.S.A. § 5101.

Appellant's argument at trial was that he lacked the *mens rea* because he could not have intentionally obstructed the execution of a search warrant that he had not been physically provided. Appellant's Br. at 18. There is no dispute that Appellant never held the search warrant in his hands. However, Corporal Dobson stated that he either physically showed it to Appellant or read it to Appellant.[3]

Appellant claims that under ***Shovlin***, he had a right to physically inspect the search warrant prior to its execution so that he was put on notice of the officer's authority to execute the warrant, and so that he could verify its authenticity. Appellant's Br. at 19, 24. If an individual demands to see the warrant, only once the officer exhibits it to him would he have no excuse for resistance. Appellant's Br. at 19 (citing ***Shovlin***). Appellant asserts that "in order to support his argument that he lacked the *mens rea*," the court should have read the proposed jury instruction, the quote from ***Shovlin***. Appellant's

_____

[3] To the extent Appellant seeks that this Court make credibility determinations between his and Corporal Dobson's testimony, "[I]t is not the role of an appellate court to reweigh the evidence, we will not disturb the jury's credibility determinations . . . ." ***Commonwealth v. Chine***, 40 A.3d 1239, 1244 (Pa. Super. 2012).

Br. at 19. By declining to instruct the jury with the **Shovlin** quote, Appellant asserts the court committed an error of law. **Id.** at 23.

The **Shovlin** case concerned the authority of an officer to make a warrantless arrest. **Shovlin**, 106 Pa. at 372. The relevant question for the Court was "whether an officer, authorized to arrest without warrant, is bound, before doing so, 'to give the party to be arrested clear and distinct notice of his purpose to make the arrest, and also of the fact that he is legally qualified to make it[.]'" **Id**. The Court stated in dicta that when an officer does possess an arrest warrant that he is to execute, it is prudent to first inform the arrestee of the nature and cause of the arrest and exhibit the warrant if the arrestee so demands.

However, acknowledging the reality of making an arrest in practice, the Court stated, "it is going too far to say, in effect, that [the officer] is required to do so." **Id.** The Court described the order of events as follows:

> [T]he accused is required to submit to the arrest, to yield himself immediately and peaceably into the custody of the officer, who can have no opportunity, until he has brought his prisoner into safe custody, to make him acquainted with the cause of his arrest, and the nature, substance and contents of the warrant under which it is made. These are obviously successive steps. They cannot all occur at the same instant of time.

**Id**. In other words, once an arrestee is in custody, the officer is required to give notice of the reason for the arrest and the basis of the warrant, but he need not do so prior to the arrest. In concluding, the Court held that the same general principle is applicable to warrantless arrests; an officer has the

authority to make a warrantless arrest as long as the arrestee is informed of the reason for his arrest afterwards. ***Id***.

Here, Appellant was arrested without a warrant on probable cause of DUI based on Corporal Dobson's observations of Appellant's impairment, the odor of alcohol, and Appellant's performance of the field sobriety tests. It is undisputed that Appellant submitted to Corporal Dobson's arrest peacefully and without resistance. Appellant was informed at the scene and in custody at the DUI processing center that the reason for his arrest was, *inter alia*, DUI, in compliance with ***Shovlin***.

The requested jury instruction, which included one sentence of dicta from the ***Shovlin*** case about the propriety of executing an arrest warrant, would have been irrelevant to both the questions of fact and the elements of the offense in this case. It could not have supported Appellant's argument that he lacked the *mens rea* of the obstruction charge because he was deprived of physically holding the search warrant.

It is well-settled that a blood draw constitutes a search under both the United States and Pennsylvania Constitutions. ***Commonwealth v. Evans***, 153 A.3d 323, 328 (Pa. Super. 2016). Generally, a search warrant is required for such an intrusive search unless an established exception applies. ***Id***. Here, Corporal Dobson properly obtained a warrant to draw Appellant's blood, and Appellant still refused. The ***Shovlin*** case makes no mention of search warrants and has no applicability to this case.

Appellant devotes much of the argument section of his brief to the assertion that it would have been reasonable for the officer to have presented a copy of the warrant. Appellant's Br. at 21, 26. He details how the underlying command of the Fourth Amendment is reasonableness, and that Appellant's request to see the warrant was reasonable. *Id.* at 16, 25. Appellant further cites Pa.R.Crim.P. 207 and 208, arguing that they stand for the proposition that Corporal Dobson was required to give a copy of the warrant to Appellant whether or not he drew blood. *Id.* at 21-23.

These arguments are meritless. The jury was properly instructed that they had to find that Appellant intentionally acted with the conscious object to cause obstruction of the execution of a lawful and valid search warrant. Appellant did not contest that the warrant was lawful and valid, nor did he seek that the warrant be excluded from trial in a pre-trial motion, nor did he preserve the issue of whether the officer failed to comply with any requirement of Rules 207, Rule 208, or the Fourth Amendment.

The trial court did not err when it refused to read Appellant's proposed jury instruction because the quote was misleading and irrelevant, and Appellant is not entitled to a new trial because he was not prejudiced by the trial court's refusal. Accordingly, we affirm.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: <u>3/17/2025</u>