VIOLET M. DAVIS, BY HER GUARDIAN *AD LITEM*, ROBERT J. DAVIS, AND ROBERT J. DAVIS, INDIVID-UALLY, PLAINTIFFS-RESPONDENTS, v. MARTIN HELL-WIG, DEFENDANT-APPELLANT.

Argued March 19, 1956—Decided April 30, 1956.

*Mr. Thomas M. Kane* argued the cause for appellant (*Mr. Vincent P. Torppey,* attorney; *Mr. Kane* of counsel).

*Mr. John J. Manley* argued the cause for respondents (*Mr. Gerald A. Caruso,* attorney; *Mr. Manley* of counsel).

The opinion of the court was delivered by

WILLIAM J. BRENNAN, JR., J.   The question presented by this case concerns a police officer's liability in negligence to an innocent bystander struck by a deflected bullet fired from the officer's service revolver in an attempt to prevent the escape of a criminal.

The defendant, a Newark mounted policeman, was on traffic duty in West Park Street, a "very narrow" street running from Broad Street to Halsey Street in Newark's central downtown and busiest section.   His assignment was to prevent parking in the street and to keep traffic moving. He saw a car parked at the curb near the entrance of Klein's Department Store on the south side of West Park Street.   He dismounted and entered the store to locate the owner of the car and have it removed.   In the store's liquor department the department manager was engaged in a dispute with a man holding a shopping bag.   Seeing the officer come in, the manager called him and charged that the man with the shopping bag had stolen its contents (later discovered to consist of bottles of liquor and a suit of clothing, the property of Klein's, having a total value of $36.87). The defendant attempted an arrest but the man shoved him aside, dropped the bag and fled for the store's West Park Street exit, knocking down a woman patron before he reached the door;  gaining the sidewalk, he turned left, or west, and ran down the middle of West Park Street toward Halsey

Street. When the defendant reached the sidewalk he called four times to the thief to "Halt" or "Stop." When the thief paid no heed and continued to run toward Halsey Street the defendant drew his revolver and, he testified, "aimed * * * at his leg, real low" and fired "to see if I could stop him." The bullet did not hit the thief but was deflected to the north side of the street where it struck and injured the infant plaintiff, 19 years of age, who was on the sidewalk walking toward Halsey Street with her aunt.

The number of pedestrians on West Park Street at the time was disputed, but defendant conceded that from his experience on the beat he was aware that there would be some at that hour, just before noon, on any shopping day. Nevertheless he admitted that, intent on stopping the fleeing thief, he "didn't look around to see if there was a lot of people around" but merely looked "to see if anybody was in the direct line" of fire, and seeing no one he fired.

The action was pleaded and tried on the theory of defendant's alleged negligence in shooting his service revolver under the circumstances, and the only issue bearing on liability submitted to the jury for its determination was whether defendant was guilty of the negligence charged. The jury resolved the issue in defendant's favor and returned a verdict of no cause for action. A motion for a new trial was denied. The Appellate Division reversed, holding that it was error to deny a new trial. 37 *N. J. Super.* 569 (1955). We granted defendant's petition for certification, 20 *N. J.* 304 (1956).

The Appellate Division's opinion rightly states that "Courts have universally regarded loaded firearms as dangerous instruments and have ascribed an elevated degree of reasonable care and caution to be exercised in their use." 37 *N. J. Super.* 573. In his notable opinion in *Palsgraf v. Long Island R. Co.,* 248 *N. Y.* 339, 162 *N. E.* 99, 100, 59 *A. L. R.* 1253 (*Ct. App.* 1928), Mr. Justice Cardozo said that "Some acts, such as shooting are so imminently dangerous to any one who may come within reach of the missile

however unexpectedly, as to impose a duty of prevision not far from that of an insurer." Our own decisions are to the same effect. In *Moebus v. Becker,* 46 *N. J. L.* 41, 44 (*Sup.* Ct. 1884), for example, it was set down that, "As fire-arms are more than ordinarily dangerous when loaded, those who handle them are bound to use more than ordinary care to prevent injury to others."

No exception from this strict rule of accountability for want of extraordinary care in the use of firearms is made in favor of a police officer whose act of shooting causes harm to innocent bystanders. A police officer is not even justified in shooting at every escaping criminal to prevent the escape. At the common law it was only when the escaping criminal had committed a common law felony and there was no other way of taking him that the peace officer was justified in shooting at him to prevent his escape. This rule obtains in our State. *Charge to Grand Jury,* 9 *N. J. L. J.* 167, at *pages* 168 and 169. The law does not countenance the act of a police officer in shooting a fleeing offender charged merely with a misdemeanor, breach of the peace or violation of the Disorderly Persons Act, and the peace officer who shoots such a fleeing offender subjects himself to civil liability to the offender and to criminal prosecution as well. *Noback v. Town of Montclair,* 33 *N. J. Super.* 420 (*Law Div.* 1954); 9 *N. J. L. J.* 167, *supra.* The reasons underlying this distinction at common law are well expressed in the opinion of the North Carolina Supreme Court in *Holloway v. Moser,* 193 *N. C.* 185, 136 *S. E.* 375, 376, 50 *A. L. R.* 262, 264, 266 (1927). It was there said:

"By the common law, an officer, in a case of felony, was permitted to use all force necessary to capture the felon, even to slaying him when in flight. In the case of a misdemeanor, however, the rule was different. The officer could defend himself, if resisted, even to the taking of life, but if the offender were simply fleeing and not resisting, he had no right to kill. It was thought that to permit the life of one charged with a mere misdemeanor to be taken, when not resisting but only fleeing, would, aside from its inhumanity, be productive of more evil than good.

The reason for the distinction was obvious. Ordinarily, the security of person and property is not endangered by a misdemeanant being at large, while the safety and security of society require the speedy arrest and punishment of a felon.

\* \* \* \* \* \* \* \*

It is universally held that an officer has no right to kill one who merely flees to avoid arrest for a misdemeanor or to effect an escape from such arrest, even though it may appear that by no other means can the accused be taken or recaptured. \* \* \* It is better that he be permitted to escape altogether than that his life be forfeited, while unresisting, for such a trivial offense. \* \* \*

\* \* \* \* \* \* \* \*

'\* \* \*. The accused is shielded in that event, even from an attempt to kill with a gun or pistol, by the merciful rule which forbids the risk of human life or the shedding of blood in order to bring to justice one who is charged with so trivial an offense, when it is probable that he can be arrested another day and held to answer.' "

In the *Holloway* case it was held that the police officer's mistaken belief that the escapee was a felon was no defense. The law values human life too highly to allow an officer to proceed to the extremity of shooting an escaping offender who in fact has committed only a misdemeanor or lesser offense, even though he cannot be taken otherwise. See *Commonwealth v. Duerr*, 158 *Pa. Super.* 484, 45 *A. 2d* 235 (*Super. Ct.* 1946), *Wiley v. State*, 19 *Ariz.* 346, 170 *P.* 869, *L. R. A.* 1918*D*, 373 (*Sup. Ct.* 1918), *Noback v. Town of Montclair, supra.*

The Appellate Division was of the view that in the instant case the escaping thief was guilty of a misdemeanor merely, namely, the theft of goods of the value or price under $50, *N. J. S. A.* 2*A*:119–2. Upon that premise it was reasoned that defendant committed "an unjustifiable, illegal, and wrongful act in discharging his gun at the fugitive petty thief" and that it was anomalous for the jury to exonerate defendant because his "markmanship was faulty" when, "if the defendant had with skillful accuracy shot and wounded the fleeing petty thief as intended, he would as a matter of law have committed an unlawful tortious act for the injurious consequence of which he is responsible." 37 *N. J. Super.*, at *page* 573.

■ Plaintiff argues that defendant's act in shooting, if not justified, was necessarily negligent as a matter of law and that the reversal and remand for a new trial should be modified to limit the issue to a determination of damages only. The Arkansas Supreme Court took this view of the liability of a police officer who, intending to shoot a fleeing misdemeanant, shot another. In *Edgin v. Talley*, 169 *Ark.* 662, 276 *S. W.* 591, 42 *A. L. R.* 1194 (*Sup. Ct.* 1925), the defendant officer had reasonable grounds for believing that Edgin was guilty of driving while intoxicated, a misdemeanor. The jury found that Edgin heard the officer's order to stop but did not obey. The officer fired at a tire but the bullet was deflected and went through the windshield and injured Edgin's companion, Goldia Floyd, who was sitting beside him. The court held that the officer was not justified in shooting to prevent the escape of a misdemeanant and that the jury verdict in his favor in Goldia Floyd's action against him must be set aside, as his negligence in causing injury to her was established as a matter of law. The court said, 276 *S. W.* 594:

"The duty of Talley to arrest George Edgin for driving an automobile along the streets while drunk, which was a misdemeanor, or, did not justify the use of firearms, and firing his pistol under the circumstances as shown by his own testimony rendered him liable for the physical injury to Goldia Floyd. While Talley had the right to carry loaded firearms in the discharge of his official duties, he had no right to use them in a negligent and careless manner, and he is liable for the unjustifiable discharge of his pistol to check the flight of George Edgin, who had only committed a misdemeanor. The undisputed evidence shows that Edgin was at most only attempting to escape, and Talley was not justified in shooting at him even as a ruse to prevent his further flight."

But the proofs in the instant case would also have supported the prosecution of the fleeing thief as one who "enters without breaking, any building * * * with intent to * * * steal," a high misdemeanor under *N. J. S.* 2*A* :94–1, in a prosecution for which the value of the goods is of no consequence, see *State v. Tonghanni*, 96 *N. J. L.* 63, 66 (*Sup. Ct.* 1921). The distinction between common law

felonies and misdemeanors persists in our State as a statutory distinction between high misdemeanors and misdemeanors. *Brown v. State,* 62 *N. J. L.* 666, 695 (*E. & A.* 1898). Thus, it cannot be said that defendant's act in shooting at the thief was without lawful justification. The case on its facts therefore parallels *Askay v. Maloney,* 85 *Or.* 333, 166 *P.* 29 (*Sup. Ct.* 1917), rather than *Edgin v. Talley.* In the *Askay* case a passenger in a passing trolley car was injured by a policeman shooting at a person who he had reason to believe was a felon and who in fact was later convicted of the felony. The court held that, although in the circumstances the officer was justified in shooting at the felon to prevent his escape, whether or not he was negligent in hitting the plaintiff was a jury question. The court said:

"* * * Though a peace officer might discharge a weapon under the circumstances stated, and his act be justified, if, however, the shooting were done in a public place, where the officer understood or should have known people were in the habit of congregating or were likely to pass, the act might constitute such negligence as to render the officer civilly liable for any injury that he might inflict upon an innocent person." 166 *P.,* at *page 31.*

On a second appeal in the case, 92 *Or.* 566, 179 *P.* 899, 903 (1919), the court further said:

"A street is not a sanctuary for a robber, and the officers had a right to exercise their prerogative of arresting the felon wherever they might find him, whether in the street or in some secluded spot. The mere act of their shooting at him was not unlawful or negligent *per se,* because as to the arresting officers it was authorized by statute. Of course, it was their duty to act with reasonable prudence to avoid the injury of innocent persons, and the care must be commensurate with the danger involved. It goes without saying that a greater *quantum* of caution should be observed in firing upon him with pistols than if they were grappling him with their hands. Whether they were negligent under all the circumstances of the case, as a result of which the injury was inflicted, was a question for the jury to determine according to the preponderance of the evidence upon a consideration of the whole case."

There is no evidence in the instant case to show what caused the bullet to be deflected to the north sidewalk where

the infant plaintiff was walking. But even though the defendant, in Mr. Justice Cardozo's words, is held to a "duty of prevision not far from that of an insurer," it does not follow that the court is to decide the issue of liability as a question of law. In *Moebus v. Becker, supra,* a case also involving an accidental shooting, the trial judge refused to withdraw the issue of negligence from the jury and was sustained by our former Supreme Court. Equally pertinent to the circumstances shown by this record is the reasoning of the former Supreme Court in the *Moebus* case that

> "The cases in which the question of negligence can thus be withdrawn from the jury are said to be comparatively rare * * *. So great is the reluctance to take the question of negligence from the jury, as a mixed question of law and fact, that the current of decision is that not only should the facts be undisputed, but the conclusions to be drawn from those facts must also be indisputable * * *. * * * it was a question of fact for the jury to determine, whether the defendant was guilty of negligence, or whether the shooting of the plaintiff by him was the result of an unavoidable accident, and was wholly without fault on the part of the defendant." 46 *N. J. L.* 43, 45.

In the instant case, too, we cannot say that defendant's liability was established by such direct and positive evidence that the issue whether plaintiff's injury was due to his negligence can be taken from the consideration of the jury and be pronounced upon as a matter of law.

The defendant has offered no persuasive reason, however, why we should disturb the Appellate Division's conclusion that the trial judge erred in denying a new trial. The court applied the standard of appellate review pronounced by this court in *Hartpence v. Grouleff,* 15 *N. J.* 545 (1954), in saying that the trial court's action in denying a new trial "clearly, yes, unequivocally appears to exhibit a manifest denial of justice under the present state of law and the undisputed facts." 37 *N. J. Super.* 574. While doubtless founded upon the erroneous premise that the defendant was not lawfully justified in shooting at the escaping thief, this expression is equally applicable although he was in fact so justified. The defendant admitted that the probability of

the presence of pedestrians on the sidewalks of this "very narrow street" was known to him, yet he made no observation for pedestrians beyond seeing whether any were in the direct line of his fire. This conduct so far departs from the applicable standard of care in the use of firearms as plainly to entitle the plaintiff to have her action considered by another jury under instructions consistent with this opinion.

Affirmed.

HEHER, J., concurring in result.

*For affirmance*—Chief Justice VANDERBILT, and Justices HEHER, WACHENFELD, BURLING, JACOBS and BRENNAN—6.

*For reversal*—Justice OLIPHANT—1.