41 N.J. Super. 339 (1956)
125 A.2d 163
STATE OF NEW JERSEY, PLAINTIFF-APPELLEE,
v.
CLYDE RONNIE, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Essex County Court, Law Division.
Decided August 27, 1956.
*340 Mr. Charles V. Webb, Jr. (Mr. Donald Cetrulo appearing), attorney for plaintiff-appellee.
Mr. Ralph H. Jacobson, attorney for defendant-appellant.
WAUGH, J.C.C.
The defendant-appellant, hereinafter referred to as the defendant, was convicted in the Municipal *341 Court of the Village of South Orange, New Jersey, of being a disorderly person, by reason of having assaulted a police officer. The offense occurred on May 19, 1956. The proceeding before the magistrate in this matter was reported stenographically and this appeal is on such record, pursuant to R.R. 3:10-10.
On the evening in question the defendant and some 40 to 50 other young people attended a party at the home of Miss Phyllis Smargiassi, at 135 Ward Place, South Orange, New Jersey. The defendant left the party at approximately 10:30 P.M. in the company of Fred Goebel, Janet Goebel and Dorothy MacKinnon. All four went across to the easterly side of Ward Place, entered Fred Goebel's car and sat talking. Mr. Goebel and the defendant sat in the front of the car, while the young ladies sat in the rear.
At approximately an hour later Philip Douglas, another guest at the Smargiassi home, left the party in the company of one Elaine Rainone. While passing the Goebel car Mr. Douglas turned to look at the defendant and his companions and pretended that he was going to throw a beer can in the direction of the car. Defendant sounded the car horn, waved to Douglas, and then resumed his conversation with the other occupants of the automobile.
Shortly thereafter, Fred Goebel called the defendant's attention to the fact that two men had come out of a nearby house and were talking to Douglas. The defendant, according to his own testimony, "turned back and continued talking again. Then after that we heard loud voices, and so I said to Freddie, `Let's go over and see what's wrong.'"
The defendant and Goebel left the car and walked across the street where they met two other guests of the party who were walking back toward the Smargiassi home. The defendant asked these two guests what was wrong between Douglas and the two strangers, and the reply was that "Phil was having an argument." The defendant stood a short distance away listening to Douglas and the two strangers and then, according to the defendant, about that time the scuffle started. Defendant then ran to the scene, grabbed *342 the man closest to him, "picked him off and turned him around," and in his own words, it was "then when I saw it was him and I let him go."
The man the defendant saw and thus recognized was Joseph Newman, a South Orange police officer. Officer Newman was in the company of Franklin Smith, a fellow police officer who was visiting the Newman home, at 127 Ward Place, on the evening in question. The officers both testified that they saw a young man and young lady (apparently Philip Douglas and Elaine Rainone) walking in the direction of the Newman home. They saw Douglas make a movement to throw something into the street. A conversation ensued, angry words followed, and the officers placed Douglas under arrest. Douglas then attempted to run away, according to the officers' testimony. Officer Newman grabbed Douglas to prevent him from evading arrest, and it was at this point that the defendant grabbed Newman. According to officer Newman, the defendant did not release him (Newman) immediately.
The two officers were in civilian clothes and there was no way of identifying them as police officers. Whether they identified themselves orally is a disputed factual question.
The defendant, while admitting touching the police officer, urges that his conduct was justified on the ground of defense of a social friend being assaulted. There appear to be no New Jersey cases on the right of self-defense in aiding a social guest who is being assaulted.
The general rule of law as set forth in American Jurisprudence is,
"In proper circumstances, one may, without committing actionable assault and battery, intervene for the defense of a third person, using such means as he could employ to protect himself from a similar aggression. The doctrines, principles, and rules of the right of self-defense apply where a person resists an attack made in his presence on a relative, or a member of his immediate family or household, or on an officer, or on any other person whom he is under a legal or socially recognized duty to protect. In fact, one may justifiably intervene in the defense of any person who is in imminent danger of serious bodily injury or death. * * * But *343 before one person has the right to use force in the defense or aid of another, the circumstances must be such that the person on whom the assault is being made has the right of self-defense, and therefore the right to use the same force, and the intervention must be necessary for the protection of the third person." 4 Am. Jur. 155
This court is of the opinion that a person has the right to defend his social friends, provided, however, that he present some evidence from which the court may find that the right of self-defense could have been properly exercised by the social friend under the circumstances existing at the time. Our leading cases on self-defense are: State v. Goldberg, 12 N.J. Super. 293 (App. Div. 1951); State v. Jayson, 94 N.J.L. 467 (E. & A. 1920); and State v. Len, 108 N.J.L. 439 (Sup. Ct. 1932).
Counsel for the defendant objected to the admission in evidence of the conversations between Douglas and the officers, in the absence of the defendant. Those conversations are not binding upon the defendant, but were properly admitted as they bear upon the question whether or not the police were justified in placing Douglas under arrest, for if they were not then they were the aggressors and Douglas and the defendant were justified in using force.
While this court is bound to give "due, although not necessarily controlling, regard to the opportunity" of the magistrate to judge the credibility of the witnesses, Donofrio v. Haag Bros., Inc., 10 N.J. Super. 258 (App. Div. 1950), a reading of the record convinces this court that the testimony of the policemen is credible. They both testified that when they first saw Douglas he appeared to be about to throw something into the street. In this respect they are corroborated by the defendant and Goebel. The testimony as to the conversation they had with Douglas prior to the scuffle is also corroborated. It is clear that the conversation became more heated, otherwise Goebel and the defendant would not have gone to the scene. I find that the officers told Douglas, in the hearing of defendant and Goebel, and Miss Rainone, that they were police officers. I find that they did place Douglas under arrest.
*344 The officers had a right to make the arrest for a breach of the peace committed in their presence. N.J.S. 2A:169-3; see Noback v. Town of Montclair, 33 N.J. Super. 420, at pages 426, 427 (Law Div. 1954). See also, Davis v. Hellwig, 21 N.J. 412 (1956), affirming 37 N.J. Super. 569 (App. Div. 1955). They also had the right to use force since Douglas resisted. In these circumstances, the defendant's actions were without any legal justification whatever. For a similar case see Commonwealth v. Di Carlo, 174 Pa. Super. 611, 101 A.2d 410 (Super. Ct. 1953).
Counsel for defendant urges that the defendant believed his friend was being attacked by unknown persons and that in those circumstances, since Goebel had given warning to the two officers to stop, the defendant was justified in entering the affray.
However, the pertinent language of the rule as set forth in the section quoted from American Jurisprudence, supra, that,
"before one person has the right to use force in the defense or aid of another, the circumstances must be such that the person on whom the assault is being made has the right of self-defense, and therefore the right to use the same force, and the intervention must be necessary for the protection of the third person."
must necessarily be followed if we are not to revert to the law of the jungle. Douglas was without right in this situation to resist a lawful arrest and, that being so, the defendant had no right, standing in the shoes of Douglas, so to speak, to come to the aid of Douglas.
I, therefore, find the defendant guilty as charged.
The defendant will appear before me on Monday, September 10, 1956, at 9:30 A.M. for sentence.