Moebus v. Becker.

RHINEHART MOEBUS v. JOHN BECKER.

1. Where two persons were gunning together, and while one was sitting on the fence his gun was discharged by pointing it, or the turning of the rail, whereby the other was wounded, the court properly left it to the jury to say whether there was negligence.
2. There are cases in which the court may instruct the jury to find negligence, but these are such that both the facts and the inferences to be drawn from them are indisputable, so that if a verdict were returned against them, it must be set aside.

The plaintiff and defendant, both minors, were gunning on November 7th, 1882, in South Brunswick township, Middlesex county. As they were sitting on a fence, about fifty feet apart, Becker asked Moebus to pick up a stone for him to shoot at; he assented, came within fifteen feet of where Becker was sitting, stooped to pick up a small stone; as he did so, Becker said, " No, not that," but pointing with his gun to another, he said, " that one." Moebus stooped again to pick up the stone indicated, and as he did so he was shot in the fleshy part of the left thigh by the defendant's gun, which was accidentally discharged. At the time, Becker sat on a fence, apparently a strong one, on the line of the railroad, with the gun cocked and loaded, resting across his knees, parallel with the fence, with one hand under the barrels, and one under the guard. Moebus had been sitting beyond an angle in the fence, not in a direct line with the gun, and as he advanced towards Becker he came nearer the line of the gun, which was afterwards turned to indicate the stone wanted, just as he was about to pick up another. Becker says, " I leaned over to kind of point out the stone, and the rail tipped with me, kind of went off that way, and the gun went off and down the embankment behind me, and I fell off on my hands and was so stunned for a moment I did not know what I was about. As soon as I came to, I saw him (Moebus) limp, and I went over and caught him by the arm and helped him towards the fence," &c. The boys were friendly, enjoying a

holiday together, drank some, but not enough to intoxicate them, were inexperienced and unsuccessful as gunners. The only material variance in the statements made by them is that Becker says Moebus advanced towards him with the gun pointing at him, and he was looking towards him as he approached, while Moebus says the gun was not pointing towards him until he was told to pick up the second stone.

When the testimony was closed the plaintiff's counsel called on the court to charge the jury that if they believed from the evidence that the defendant sat on the fence with his gun full cocked, and his hand either on or near the triggers, and the gun was pointing in the direction of the plaintiff, the defendant was guilty of negligence; and if his gun was then discharged, and wounded the plaintiff the defendant was liable, and must respond to him in damages therefor.

The court declined so to charge, and submitted the case to the jury, with instructions, who found the defendant not guilty.

Exceptions were taken to this refusal to charge, and a writ of error brought.

Argued at November Term, 1883, before BEASLEY, CHIEF JUSTICE, and Justices DEPUE, VAN SYCKEL and SCUDDER.

For the plaintiff, *E. W. Strong.*

For the defendant, *C. T. Cowenhoven.*

The opinion of the court was delivered by

SCUDDER, J. On this writ of error, which presents only the exception taken to the refusal of the court to charge as requested, the case is not in a position to decide the propriety of the verdict which the jury have found. The plaintiff puts himself on the single ground that it was not a proper case for the jury, and that the court erred in submitting it to them. He must therefore be at the disadvantage of conceding all that may be rightly claimed from the evidence, taken most strongly

against himself when asking for positive instructions. Whenever there is variance in the testimony, and the versions given by the parties of this unfortunate occurrence, that which is most favorable to the defendant must be taken, for the plaintiff makes no denial of facts upon which the jury need pass; but admitting all the facts, he claims that the defendant is guilty of negligence, that the court should have so held, and taken the case from the jury. The cases in which the question of negligence can thus be withdrawn from the jury are said to be comparatively rare, and the effort to withhold them from that tribunal is more frequently made by the defendant, who is seeking to shelter himself under some technical defence, than by the plaintiff, who comes into court with all the natural sympathy of others for his sufferings weighing in his favor.

So great is the reluctance to take the question of negligence from the jury, as a mixed question of law and fact, that the current of decision is, that not only should the facts be undisputed, but the conclusions to be drawn from those facts must also be indisputable. This is only a slight variance in the statement of the law as it has been administered for many years in our courts. *Central R. R. Co.* v. *Moore*, 4 *Zab.* 824 ; *Aycrigg* v. *N. Y. & E. R. R. Co.*, 1 *Vroom* 460.

The words of Johnson, J., in *Ireland* v. *Oswego, &c., Plank Road Co.*, 13 *N. Y.* 526, 533, have been often cited with approval in other courts. He says: "It by no means necessarily follows, because there is no conflict in the testimony, that the court is to decide the issue between the parties as a question of law. The fact of negligence is very seldom established by such direct and positive evidence that it can be taken from the consideration of the jury and pronounced upon as matter of law. On the contrary, it is almost always to be deduced as an inference of fact from several facts and circumstances disclosed by the testimony, after their connection and relation to the matter in issue have been traced, and their weight and force considered. In such cases the inference cannot be made without the intervention of a jury, although all the witnesses agree in their statements, or there be but one statement consistent

throughout. Presumptions of fact, from their very nature, are but strictly objects of legal science, like presumptions of law." Similar expressions of the law applicable to this subject have been made in many other cases. *Detroit & M. R. R. Co.* v. *Van Steinburg*, 17 *Mich.* 99 ; *Westchester & P. R. R. Co.*, v. *McElwee*, 67 *Penna. St.* 311 ; *Railroad Co.* v. *Stout*, 17 *Wall.* 657 ; *Gaynor* v. *Old Colony, &c., R. R.*, 100 *Mass.* 208 ; 2 *Thomp. on Neg.* 1236 ; *Whart. on Neg.*, § 420 ; *Metropolitan R. Co.* v. *Jackson, L. R.*, 3 *App. Cas.* 193.

There are cases in which the court should and may interfere without invading the province of the jury ; but these are cases where there is no dispute about the facts, nothing material left in doubt, nor questions as to the credibility of witnesses, and nothing left to be inferred by way of explanation or excuse, and such that if a verdict be returned it must be set aside. *Brooks* v. *Somerville*, 106 *Mass.* 271 ; *Randall* v. *Baltimore and Ohio R. R. Co.*, *U. S. Supreme Ct*, (reported *Alb. Law Jour.*, Feb. 23d, 1884.)

Whenever, therefore, juries acting honestly and intelligently may draw different conclusions from the testimony, the question should be left to them to say whether the defendant has been guilty of negligence. It is claimed that in this case there was no room for such diversity of opinion, and that the inference of negligence in the use of his gun by the defendant was indisputable.

The duty which a person, lawfully carrying fire-arms, owes to others is not different from that which is imposed on all who have control of any hurtful thing, except in the degree of care to be exercised. As fire-arms are more than ordinarily dangerous when loaded, those who handle them are bound to use more than ordinary care to prevent injury to others. The cases cited in the plaintiff's brief, of actions for injuries caused by the explosion of fire-arms, and many others, are found in the notes to *Morgan* v. *Cox*, 22 *Mo.* 373 ; collated in 1 *Thomp. on Neg.* 238. Beginning with the case of *Weaver* v. *Wood*, *Hob.* 134, all hold a strict rule of accountability for the want of extraordinary care in their use ; but in no case is it

Mulligan v. Cavanagh.

said that where persons are gunning voluntarily together, each may be held responsible for every accident or mishap that may occur to the other while thus engaged ; or, that it is necessarily negligence to carry a gun cocked when in pursuit of game, or that in passing through brush, crossing ditches, climbing fences, or resting upon them, the gun must be uncocked. Nor if one should pass in front of the other by his request or on his own motion, and by stumbling or falling, the gun of the other is discharged and a wound inflicted, that the only question to be considered by the jury is the amount of damages to be paid, and that negligence will be inferred as a presumption of law. Each case must stand upon its own peculiar facts, and rational rather than distinctively legal conclusions must usually be drawn from them. Whether in this case the damage to the defendant was the result of the pointing of the gun, or the accidental turning of the rail of the fence, causing the defendant to fall, and the discharge of the gun, as he has testified, was a question for the jury, and not for the court. The court refused to charge as requested, but did charge that, under the circumstances, it was a question of fact for the jury to determine, whether the defendant was guilty of negligence, or whether the shooting of the plaintiff by him was the result of an unavoidable accident, and was wholly without fault on the part of the defendant. If the jury erred in their finding, the plaintiff might ask that the case be submitted to another jury, but cannot prevail on the assignment of error presented to this court.

The defendant is entitled to judgment.