# Gaussman *v.* Philadelphia & Reading Railway Company, Appellant.

*Negligence—Railroads—Passenger—Ticket agent—Negligent shooting of passenger.*

Where a pistol goes off in the hands of a ticket agent of a railroad company in his office because the trigger hit a drawer as the agent was taking it out to place it upon a shelf, and the bullet from the pistol injures a passenger in the station, and it appears that the accident happened when the agent was going upon duty for the night, that there was a considerable amount of money in his custody, and that there had been a previous robbery of the station, the question of the agent's negligence and the liability of the company under the doctrine of respondeat superior is for the jury, and a verdict and judgment for the passenger will be sustained.

Argued Oct. 9, 1913.   Appeal, No. 39, Oct. T., 1913, by defendant, from judgment of C. P. No. 5, Phila. Co., Dec. T., 1909, on verdict for plaintiff in case of Frederick C. Gaussman v. Philadelphia & Reading Railway Company.   Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD and PORTER, JJ.   Affirmed.

Trespass to recover damages for personal injuries.

The facts are stated in the opinion of the Superior Court.

Verdict and judgment for plaintiff for $324.   Plaintiff appealed.

*Error assigned* was in refusing binding instructions for defendant.

*Wm. Clarke Mason,* for appellant.—The burden is upon the plaintiff to show that the injury was caused by a servant of the defendant while acting within the scope of his employment: Guille v. Campbell, 200 Pa. 119.

Even though there had been evidence disclosing the

fact that the servant had been acting within the scope of his employment in the use of the pistol, the injuries resulted from an "unavoidable accident," for which there can be no recovery: Sutton v. Bonnett, 114 Ind. 243; Hunter v. Ry. & Bridge Co., 85 Fed. Repr. 379; Wall v. Lit, 195 Pa. 375; White v. Roydhouse, 211 Pa. 13.

*Robert S. Shaw*, with him *Francis C. Menamin*, for appellee.—A railroad company is responsible for injuries due to negligence of its employees while acting within the course of their employment: Drew v. Peer, 93 Pa. 234; Philadelphia Traction Company v. Orbann, 119 Pa. 37; Lake Shore & M. S. Ry. Co. v. Rosenzweig, 113 Pa. 519; McFarlan v. R. R. Co., 199 Pa. 408.

The agent was acting within the scope of his authority as he, in removing the revolver from the desk, was taking a precautionary measure to protect the company's property: Texas Midland R. R. Co. v. Dean, 82 S. W. Repr. 524; Gulf, etc., Ry. Co. v. Luther, 90 S. W. Repr. 44.

It was in the province of the jury to decide whether or not the servant was acting within the scope of his employment when the plaintiff was injured: Schimpf v. Harris, 185 Pa. 46; Hestonville, M. & F. Pass. Ry. Co. v. Grey, 1 Walk. 513; Quinn v. Shamokin & M. C. Elec. Ry. Co., 7 Pa. Superior Ct. 19; Madara v. Shamokin & M. C. Elec. Ry. Co., 192 Pa. 542; Pennsylvania R. R. Co. v. Spicker, 105 Pa. 142.

OPINION BY HEAD, J., February 20, 1914:

The plaintiff, intending to take passage on one of the defendant's trains, came into its station at Wayne Junction for the purpose of procuring a ticket. The agent of the company was just about going on duty for the night. His work was performed in a small office or compartment separated from the main room by partitions composed, at least in part, of opaque glass.

It appears a loaded revolver was kept by him for the protection of himself and of the company's property in his custody. As part of his preparation for the night's work, he removed the loaded revolver from the drawer of a desk with the intention of placing it either on the top of the desk or on a shelf where it would be readily at hand if needed. In removing the revolver from the drawer he struck the trigger against the edge of the drawer and this resulted in an explosion of the ball cartridge with which it was loaded. The ball passed through the glass and lodged in the shoulder of the plaintiff and he brought this action against the company to recover damages for the injury thus caused.

As the case is presented to us, we may best consider it in two aspects:—

(1) Did the evidence warrant a finding by the jury that the injury of the plaintiff was caused by the negligence of the person handling the loaded revolver; or could the learned trial court have properly declared, as matter of law, that no evidence of negligence was presented and that the injury must be classed with those unavoidable accidents for which the law furnishes no remedy?

Certainly the mere possession of a loaded pistol by a person who served his employer during the night, and who by virtue of his employment was the custodian of money and other valuable property of his employer, could not be considered a negligent act. How much care should he have exercised in handling a dangerous loaded weapon? It is to be observed the pistol was not discharged by any unforeseen or theretofore unknown quality or characteristic of the explosive powder used. The explosion followed the direct application of force at the point where such force is usually mechanically applied in order to discharge the weapon. This force was not applied by any extraneous cause over which the individual handling the revolver had no control. It was applied by him. Truly, he did not intend so to apply

it. But the exercise of a little more care in handling the weapon would have certainly prevented the explosion, and it cannot be said therefore that the accident was an unavoidable one.

The introduction of electricity has shown, that when controlled and handled by men possessed of necessary skill and knowledge, it has become a most valuable servant to promote the material progress characteristic of our age. Unless, however, it be controlled by the requisite knowledge, skill and care, it is fraught with menace to the lives and safety of the people. It is familiar doctrine then that upon those who introduce such a dangerous agency into a community, the law imposes the highest degree of vigilance, care and skill in handling and controlling it. It needs not that one be educated in the law to appreciate the justice, indeed the necessity of this well-recognized principle. It appears to us to be no stretch of this doctrine to declare that he who, for his own purposes or those of his employer, undertakes to handle a loaded weapon in and about a place where human beings are constantly assembling and passing to and fro, is also subjected by the law to a high degree of vigilance and care in the management of such a dangerous instrumentality. Negligence is the absence of care under the circumstances. The legal standard of due care must therefore vary with the change of the conditions and circumstances under which men act. Unless it be apparent from the circumstances what standard of care reasonable men of ordinary prudence would apply to the performance of the particular act in question, it is the function of a jury to say whether or not such standard has been observed. It cannot be determined by the court as a question of law. We think therefore that in disposing of the case at bar, the learned trial judge could not have said that the evidence disclosed no departure from that standard of due care which the law required under the particular circumstances and that such question was properly submitted to the jury.

(2) Assuming that if the action had been brought against the individual who discharged the revolver, there would have been a case for the jury, does the evidence further disclose a situation for the application of the doctrine of respondeat superior; or could the learned trial court have properly affirmed that the act of the agent was so clearly outside the scope of his authority that no liability of his principal would result from his negligent performance of that act? The able counsel who argues for the appellant frankly concedes the plaintiff was a passenger, entitled to all of the protection which a carrier is bound to afford to one in that relation to it. We may agree that the carrier does not become an insurer of the safety of its passenger, but it certainly owes to him a high degree of protection and care. The stress of that obligation rests upon its servants in the performance of every act reasonably incident to the discharge of their duty to the master. It being conceded the individual who discharged the revolver was the ticket agent of the carrier, in apparent charge and control of its property at that station, a jury would be warranted in inferring his duty to protect and safeguard the money and valuable property of the carrier that would come into his charge by virtue of his employment. It appears that his time of service was during the night. It is of our common knowledge that local passenger trains at least run with less frequency during the night than in the daytime, and as a natural consequence the carrier's agent, at a local station, might be subjected during such hours to attacks from those seeking to secure the funds in his possession. It is also of our common knowledge that men who are required to protect valuable property from such attacks during periods of especial danger usually arm themselves as one reasonable means of preventing the success of such an attack if it should be made. Whilst the evidence does not disclose what the attitude of the carrier was as to the possession of such weapons by its employees, we are

advised by the declaration of the agent, made at the moment of the accident, and necessarily part of the res gestæ, that "he was taking the pistol from the bottom drawer and was going to place it on the top so that he could have it in case of necessity to protect himself, because there was plenty of money around there and he said, 'it is best to have the pistol ever since the holdup there.'" The jury then had fairly before it a knowledge of existing conditions, and in the absence of any further testimony on the subject, we think it was for them to say whether or not the act of the agent in keeping the loaded pistol at his hand was so fairly incident to the performance of the duty he owed his employer that the latter ought to be legally responsible for his negligent act in the handling of it.

Notwithstanding the able argument presented by the learned counsel for the appellant, the line of reasoning we have indicated impels us to the conclusion that on neither branch of the case could the learned trial judge have with propriety withdrawn the controlling questions from the consideration of the jury. As there is no complaint as to the manner of the submission, the assignments of error must be overruled.

Judgment affirmed.