Lindh *v.* Protective Motor Service Co., Inc.,
Appellant.

Argued December 6, 1932. Before FRAZER, C. J., SIMPSON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*Raymond A. White, Jr.,* with him *Maurice W. Sloan,* of *Sloan, White & Sloan,* for appellant.—One is liable only for the natural and probable consequences, such as might and should be foreseen in the light of common experience: Stearns v. Spinning Co., 184 Pa. 519; Bannon v. R. R., 29 Pa. Superior Ct. 231.

There was no evidence of negligence: Zahniser v. Torpedo Co., 190 Pa. 350; Direnzo v. Iron Works, 265 Pa. 561; Kosson v. Power Co., 293 Pa. 131.

The verdict was excessive: Com. v. Slade, 91 Pa. Superior Ct. 533; Lancaster v. Reese, 260 Pa. 391; Murphy v. R. R., 292 Pa. 213, 217; Glasco v. Green, 273 Pa. 354; Windel v. Davis, 275 Pa. 23.

*Francis M. McAdams,* with him *Frank J. Eustace, Jr.,* and *Andrew B. McGinnis,* for appellee.—Defendant's negligence was for the jury and its finding for plaintiff was proper: Gaussman v. Ry., 55 Pa. Superior Ct. 542; Fredericks v. Refining Co., 282 Pa. 8; Winans v. Randolph, 169 Pa. 606.

The verdict of the jury will not be disturbed unless clearly and palpably exorbitant and unjustified by the evidence: Wilson v. Beef Co., 295 Pa. 168; Herb v. Hallowell, 304 Pa. 128; King v. Gas Co., 307 Pa. 287.

The verdict was not excessive: Paul v. Refining Co., 304 Pa. 360; Wilson v. Beef Co., 295 Pa. 168; Parkin v. P. R. T., 300 Pa. 569.

OPINION BY MR. JUSTICE SCHAFFER, January 3, 1933:

Defendant asks us to say it is not liable in damages to plaintiff for the death of her husband, that his death was brought about by an unfortunate accident, for which no one was responsible, and out of which no cause of action arises. We find ourselves unable to so conclude, and agree with the court below that the act of defendant's employee, in dropping the revolver which killed appellee's husband, was, under the circumstances, a negligent one.

Defendant is engaged in furnishing a protective service to banks in the removal and transportation of money and other valuables. Its employees when in its service are armed with weapons and accoutrements furnished by it. One of defendant's employees was gathering up specie boxes in the financial institution where plaintiff's husband was employed as night manager. Around the man's waist was a belt to which was attached a holster containing a revolver. Over the top of the holster was a

strap which when fastened held the revolver securely in place. Defendant's employee had not fastened this strap. It was shown that it is customary when revolvers are being carried by police and armed men in defendant's business to have the hammer of the weapon on an empty chamber so that pressure on the hammer or other fortuitous happening cannot cause the revolver to discharge.

In stooping over to pick up the specie boxes, defendant's employee caused the revolver to slip from the holster and fall to the concrete floor. It was discharged and the bullet struck the deceased, who was standing near by, killing him instantly. His death resulted from two thoughtless acts on the part of the carrier of the revolver, his failure to fasten the strap over the top of the holster and his neglect to put the hammer on an empty chamber. The general rule is that persons handling or carrying loaded firearms in the immediate vicinity of others are held to a very high degree of care and are liable for injury to another in his person or property resulting from the firearm's discharge, even though the discharge is accidental and unintentional, provided it is not unavoidable: 40 Cyc. 872; 20 R. C. L. 52; Thompson on Negligence, 2d edition, volume 1, section 787. "A higher degree of care is required in dealing with a dangerous agency than in the ordinary affairs of life or business;......every reasonable precaution suggested by experience and the known danger ought to be taken:" Fredericks v. Atlantic Refining Co., 282 Pa. 8, 13.

A case somewhat similar to the one at bar is Gaussman v. Phila. & Reading Ry. Co., 55 Pa. Superior Ct. 542. There the plaintiff went into defendant's station to procure a ticket. The agent of the defendant, in removing a revolver from the drawer of a desk, accidentally struck the trigger against the edge of the drawer and the revolver exploded, the bullet striking the plaintiff. He was allowed to recover damages for his injuries. Another firearm case where recovery was allowed is Win-

ans v. Randolph, 169 Pa. 606. Our conclusion is that under the facts shown plaintiff in the instant case cannot be denied recovery as a matter of law.

A further complaint of appellant is that the verdict is excessive. As rendered, it was for $30,774.12. This the court below reduced to $25,774.12. Of this sum $774.12 was for funeral expenses. The damages fixed by the jury were too high; as diminished they are close to the border of excessiveness. Some rather unusual factors are to be taken into account in determining the reasonableness of the compensation fixed for the widow and the two minor children, ten and seven years of age. The deceased at the time of his death was 38 years old. He had been employed at the bank for seven years. His health was good. He was a graduate of the Central High School of Philadelphia, of the Wharton School of Finance of the University of Pennsylvania, and of a special two years' banking course at the American Institute of Banking. He was successively employed as a bank teller and an auditor of a railroad company. On the outbreak of the World War, he became connected with the pay corps of the navy, where he served for four years, at the end of which time he was employed by the trust company with which he was engaged at the time he died as teller and was advanced until at that time he was night manager of an important branch of one of Philadelphia's largest financial institutions. His original salary as teller was $1,500 per annum, at his death as night manager it was $2,650. It was shown he had earned in the year preceding his death something in excess of $150 by extra work. He would seem to have been well equipped for the kind of work he was doing.

The deceased deposited all of his earnings in his wife's bank account. She gave to him such money as he required for personal expenses. In his last year this amounted to $555, which left almost $2,200 as his contribution to the support of his family and home. There was a mortgage on the home, the interest charge on

which was $240 a year. Taxes, water rent and fuel required an annual outlay in excess of $200. He seems to have been a man of domestic tastes, devoting substantially all of his time when not at work to his family. According to life tables, his expectancy was about 28 years. His employment was not of the character in which earning power usually decreases with advancing years, as is the case with manual workers. On the contrary, it is fair to assume, in the light of his preliminary training and past advancements, that, had he lived, as time went on his earnings would have increased. The measurement of a man's future earnings in cases of this kind is not a matter of exact formula—of addition and multiplication—but of judgment, taking into account all factors entering into the likelihood of his career had he lived. So considering the matter, we cannot say that to appraise at $25,000 the financial loss to the deceased's wife and children is so unreasonable as not to be founded on their reasonable expectations. We would not approve an award beyond this sum, but are not disposed to further reduce it. In coming to our conclusion, we have in mind what was said regarding damages for loss of future earnings in our recent cases of King v. Equitable Gas Co., 307 Pa. 287, and Thirkell v. Equitable Gas Co., 307 Pa. 377, and in our earlier decisions therein reviewed.

The judgment is affirmed.

Mr. Justice SIMPSON joined in the result.