PATRICIA A. STEWARD, PLAINTIFF-APPELLANT, v. BOR-
OUGH OF MAGNOLIA, A MUNICIPAL CORPORATION,
DEFENDANT-RESPONDENT.

Superior Court of New Jersey
Appellate Division

Submitted April 21, 1975—Decided May 28, 1975.

Before Judges LEONARD, SEIDMAN and BISCHOFF.

*Messrs. Jubanyik, Jubanyik & Varbalow,* attorneys for appellant (*Mr. Richard J. Jubanyik,* of counsel).

*Messrs. Webb and McDermott,* attorneys for respondent (*Mr. John P. Mc Gee,* of counsel).

The opinion of the court was delivered by

SEIDMAN, J. A. D. This is an appeal from an order granting summary judgment in favor of defendant municipality and dismissing plaintiff's personal injury, negligence action.

The facts are essentially uncontroverted. Plaintiff's husband, a part-time police officer employed by the Borough of Magnolia, was on duty March 12, 1973. He went home for dinner, as he was permitted to do, and was about to return to work when his wife called his attention to "something wrong" with his service revolver. As he withdrew the weapon from its holster it discharged, the bullet striking plaintiff in the face and causing a serious injury.

Plaintiff filed a complaint against the borough seeking damages for the injuries she sustained. She alleged that "[d]efendant BOROUGH of MAGNOLIA was negligent in its trainings, instruction, supply of equipment and otherwise generally negligent in its own right, and further that it is subject to vicarious liability due to the negligence of the said Raymond J. Steward." Defendant's answer denied

negligence, charged plaintiff with contributory negligence, and claimed immunity from liability by reason of the Tort Claims Act (*N. J. S. A.* 59:1–1 *et seq.*).

The trial judge held on the motion for summary judgment that since interspousal immunity existed, the municipality could not be liable under the Tort Claims Act. He did not deal in his oral opinion with the allegations of direct negligence on the part of the borough.

■ We should comment at the outset on the manner in which the trial judge's apparent oversight with respect to the latter issue was brought to our attention. Plaintiff's counsel "represented" in his brief that the trial judge met subsequently in chambers with both counsel and indicated that he intended to dismiss the allegations of direct negligence because the plaintiff failed to produce an affidavit from an expert in opposition to the defendant's motion for summary judgment. While we have no reason to doubt the accuracy of the representation, which is not disputed by opposing counsel, reference should not be made to matters outside the record. The attorneys could have stipulated to what occurred after the determination of the motion. Or, preferably, the trial judge should have been requested to supplement his opinion for the record, either orally or in writing, in view of the requirement on a motion for summary judgment that the court find the facts and state its conclusions. *R.* 4:46–2.

Plaintiff contends on appeal that (1) she should not be barred from recovery because of the interspousal immunity concept, (2) the application of the doctrine violates the equal protection clause of the 14th Amendment, and (3) summary judgment was erroneously entered on her direct negligence claim since the pleadings and interrogatories presented genuine issues of material fact.

■ The equal protection argument, advanced for the first time on appeal, is rejected. We are not bound to consider constitutional questions not raised below. *Roberts Elec., Inc., v. Foundations & Excavations, Inc.,* 5 *N. J.* 426, 429

(1950); *Mancuso v. Rothenberg,* 67 *N. J. Super.* 248, 257 (App. Div. 1961).

As for the interspousal immunity issue, we are urged to "take the next step hinted at" in *Immer v. Risko,* 56 *N. J.* 482 (1970), and abolish immunity for negligently inflicted injuries in nonmotor vehicle situations. This is beyond our power.

We have seen in recent years a steady retreat from common law immunities from liability. In the area of personal torts arising out of the negligent operation of automobiles, the rule of interspousal immunity was abandoned in *Immer v. Risko, supra,* but the court left to future decisions the question of what other claims should be entertained 56 *N. J.* at 495. The current state of the law on the subject is thoroughly reviewed in *Small v. Rockfeld,* 66 *N. J.* 231 (1974). Speaking for the majority of the court, Justice Jacobs said therein, albeit as *dictum,* that

* * * [t]he reasoning and tenor of Justice Proctor's opinion in *Immer* leaves no room whatever for doubt that he, along with the colleagues who joined him, considered the interspousal immunity to have been effectively terminated in our State in situations, such as the one at hand, that are unconcerned with any marital relationship privilege or simple domestic negligence. [At 241]

Thus, despite the substantial erosion of interspousal immunity, there are clearly some areas in which the doctrine is still viable. Paraphrasing what was said in *Pearce v. N. J. Highway Authority,* 122 *N. J. Super.* 342, 345 (App. Div. 1973), it has not yet been declared dead, and we are not privileged "to administer the *coup de grace.*" Further reconsideration of the doctrine is a matter for the Supreme Court alone. *Franco v. Davis,* 51 *N. J.* 237, 238 (1968).

Plaintiff submits, however, that this case involves a situation that is unconcerned with a marital relationship privilege or simple domestic negligence, the two surviving categories mentioned by Justice Jacobs. She seeks to differentiate the facts involved herein from the marital relationship privilege,

which, she contends, encompasses the area of libel and slander, or from what she considers "household negligence," as where a husband trips on a vacuum cleaner left by his wife on the stairs. We need not determine whether plaintiff correctly construes the cited passage in *Small, supra,* nor do we deem it necessary at this time to stake out the boundaries of what remains of interspousal immunity. This is so because, in our view, immunity, if it exists here, would not in any event bar *per se* the *respondeat superior* claim asserted against defendant municipality.

The law has long been settled in this State that immunity for a tort committed by one spouse against the person of the other does not extend to the tortfeasor's employer, when the wrongful act is done in the course of the employer's business. *Hudson v. Gas Consumers' Ass'n,* 123 *N. J. L.* 252, 254–255 (E. & A. 1939). The right to sue the employer in such circumstances is an independent, primary right and not subordinate to or dependent upon the right to sue the employee. *Id.* at 254. See also *Clement v. Atlantic Casualty Ins. Co.,* 13 *N. J.* 439, 445 (1953). The rationale appears in *Eule v. Eule Motor Sales,* 34 *N. J.* 537 (1961):

* * * [A] husband's negligent injury of his wife constitutes a wrong, and the barrier to an action by her against him is solely an immunity personal to him. This distinction between the existence of a wrong and the husband's private immunity from suit was repeated in *Koplik, supra* [*Koplik v. C. P. Trucking Corp.*] where the court said (27 *N. J.* [1] at *p.* 7) "our statute simply disables or incapacitates the spouse possessing the cause of action from suing the tortfeasor mate." The employer, the *Hudson* opinion continued, is liable because "The master is liable for the servant's act as though for his own," citing the maxim, "He who acts through another acts by himself" (123 *N. J. L.,* at *pp.* 254–255). Thus, the employer is directly chargeable as if he were the immediate actor and may not escape because his employee happened to be the husband of the victim. [at 539]

See also, *Long v. Landy,* 35 *N. J.* 44, 50 (1961); *Radelicki v. Travis,* 39 *N. J. Super.* 263, 265–266 (App. Div. 1956).

Nonetheless, defendant seemingly finds in the Tort Claims Act a legislative purpose to free public entities from vicarious tort liability in those situations where the employee is protected by interspousal immunity from the consequences of his tortious conduct. Particularly, defendant relies on *N. J. S. A.* 59:2–2(b), which provides that

> * * * [a] public entity is not liable for an injury resulting from an act or omission of a public employee *where the public employee is not liable.* [Emphasis supplied]

The argument advanced is that this wording evinces an intent to limit, not to create, new areas of liability. We are exhorted to refrain from extending *Immer* so as "to create a cause of action that the Tort Claims Act expressly precludes." We disagree with defendant's interpretation of the statute.

Subparagraph (a) of *N. J. S. A.* 59:2–2 states that a public entity is liable for injury proximately caused by an act or omission of a public employee within the scope of his employment in the same manner and to the same extent as a private individual under the circumstances. This sets forth the established doctrine of *respondeat superior* and specifically adopts the general concept of vicarious liability of governmental units expressed in *McAndrew v. Mularchuk,* 33 *N. J.* 172, 190–196 (1960). See Comment (1972) appended to *N. J. S. A.* 59:2–2. Since interspousal immunity did not theretofore inure to the benefit of the employer of a tortfeasor spouse, the above provision of the Tort Claims Act does not create a liability where one did not exist before, nor does such liability, as defendant contends, come about through an extension of *Immer.*

Defendant argues further, however, that irrespective of the foregoing, the public employee here is not liable for the injury to his wife; consequently, the borough is likewise not liable under subparagraph (b) of *N. J. S. A.* 59:2–2. We disagree. We do not construe this portion of the statute to

extend vicariously to the public entity the interspousal immunity of its employee.

*N. J. S. A.* 59:2–2 should be read together with *N. J. S. A.* 59:3–1, which provides as follows:

a. Except as otherwise provided by this act, a public employee is liable for injury caused by his act or omission to the same extent as a private person.

b. The liability of a public employee established by this act is *subject to any immunity of a public employee provided by law* and is subject to any defenses that would be available to the public employee if he were a private person. [Emphasis supplied]

 This section incorporates existing case law that public employees are generally liable for injury caused by their acts or omissions to the same extent as private persons, unless granted immunity. *Florio v. Jersey City,* 101 *N. J. L.* 535, 542 (E. & A. 1925); *Kisielewski v. State,* 68 *N. J. Super.* 258, 262 (App. Div. 1961), certif. den. 36 *N. J.* 144 (1961); *Gilday v. Hauchwit,* 91 *N. J. Super.* 233, 242 (App. Div. 1966), mod. 48 *N. J.* 557 (1967); *Harris v. State,* 118 *N. J. Super.* 384, 390 (App. Div. 1972); *Logan v. No. Brunswick Tp.,* 129 *N. J. Super.* 105, 110 (App. Div. 1974). Immunity has been accorded where the public employee acts in a discretionary, rather than ministerial, fashion. *Cashen v. Spann,* 125 *N. J. Super.* 386, 401 (App. Div. 1973), mod. on other grounds, 66 *N. J.* 541 (1975). See also, *Bedrock Foundations, Inc. v. Geo. H. Brewster & Son, Inc.,* 31 *N. J.* 124 (1959). The Tort Claims Act lists the various types of discretionary activities for which a public employee is not liable (*N. J. S. A.* 59:3–2), and also immunizes such employee from the consequences of other specified acts or conduct: *e. g.,* acting in good faith in the execution or enforcement of any law (*N. J. S. A.* 59:3–3); acting under the apparent authority of an invalid law (*N. J. S. A.* 59:3–4); failing to inspect or negligently inspecting property (*N. J. S. A.* 59:3–7). See also, *N. J. S. A.* 59:4–1 *et seq.;* 59:5–1 *et seq.,* and 59:6–1 *et seq.*

■ There is no doubt that the term "immunity" as used in *N. J. S. A.* 59:3–1(b) relates only to those exemptions from liability for particular kinds of conduct or activities as were previously given to public employees by case law or as are now found in the Tort Claims Act. It clearly does not encompass any immunity available to the employee for a reason other than his public employment, such as an interfamilial relationship.

■ True, the liability of a public employee is also subject to any defenses that would be available to him if he were a private person. But, while we are aware of the statutory provision that a public entity is not liable for an injury resulting from an act or omission of a public employee where the public employee is not liable, we do not understand this to mean that an employer can escape responsibility for the tortious act of its employee, done within the scope of his employment, merely because the injured person happens to be the spouse of the employee and is thus unable to pursue the cause of action she would have but for interspousal immunity. In the context of the Tort Claims Act we think the defenses referred to in *N. J. S. A.* 59:3–1(b) are those that would also be available to the public entity with respect to its vicarious liability, such as, for example, contributory negligence, release and the statute of limitations.

To clothe the public entity vicariously with its employee's purely personal immunity could lead to anomalous and incongruous results. Since, as we noted hereinabove, the Tort Claims Act explicitly imposes upon the public entity the same *respondeat superior* liability as if it were a private individual (subparagraph (a) of *N. J. S. A.* 59:2–2), it should follow as a matter of course under existing law that the public entity may be sued where the injured person is the spouse of the public employee, even though the latter may not. Otherwise, subparagraph (b) would necessarily have to be construed as an exception to the preceding provision, and we find nothing in the statute or in any of the explanatory comments which supports that conclusion.

■ Moreover, if this construction were to be adopted, the disfavored doctrine of interspousal immunity would expand to embrace public entities, a benefit not enjoyed by private employers. Thus, where a police patrol car knocks down and injures a pedestrian who happens to be the wife of the police officer driving the vehicle, she may sue the municipal employer (and also, of course, her husband). But where, as in this case, the officer's revolver is discharged by reason of his alleged negligence, his injured wife may not sue the municipality simply because her husband is immune from suit. We cannot believe the Legislature intended that result.

■ We hold, therefore, that under the Tort Claims Act a public entity may be liable for injury resulting from an act or omission of its employee within the scope of the employment, notwithstanding that a suit against the employee may be barred by reason of interspousal immunity.

We turn next to the allegations of direct negligence against the borough which are detailed in plaintiff's answers to interrogatories propounded by defendant. She claims that the borough was negligent

> \* \* \* in allowing Raymond Steward to have a gun; failing to give Raymond Steward adequate training in the use and handling of firearms; failing to inspect the firearms; failing to supply Raymond Steward with a holster with a safety strap; failure to maintain a program of continuing inspections and the retraining of firearms and the use thereof; and in general with negligent [*sic*] and exposing members of the public (including Plaintiff) to a firearm in the hands of one inadequately trained and inadequately equipped.

Defendant contends that these allegations involve matters of discretion for which the public entity has immunity; that there are no guidelines or standards for the training of police personnel in the use of firearms, and that the nature and extent of such training is left to the sound discretion of the municipality.

■ Our courts have universally regarded loaded firearms as dangerous instruments and have prescribed an elevated degree of reasonable care and caution to be exercised in their

use. *Davis v. Hellwig,* 21 *N. J.* 412, 415 (1956); *Wimberly v. Paterson,* 75 *N. J. Super.* 584, 596 (App. Div. 1962). See also, *Ambrose v. Cyphers,* 29 *N. J.* 138, 146 (1959). The mandatory duty of a public entity to give its police officers adequate training in the use of firearms is clearly stated in *McAndrew v. Mularchuk, supra*:

> Municipal entities must take cognizance of the hazard of sidearms. That knowledge casts an obligation on them when they arm or sanction the arming of reserve patrolmen for active police duty. The obligation is to use care commensurate with the risk to see to it that such persons are adequately trained or experienced in the proper handling and use of the weapons they are to carry. If the official in general authority in the police department sends or permits a reserve officer to go out on police duty without such training or experience, his action is one of negligent commission — of active wrongdoing —, and if an injury results from an unjustified (see, *State v. Williams,* 29 *N. J.* 27 (1959)) or negligent shooting by that officer in the course of performance of his duty, which is chargeable to the lack of training or experience, the municipality is liable. [33 *N. J.* at 184]

The trial judge here made no findings of fact on this issue when he granted the motion for summary judgment, although we are told one reason, at least, was plaintiff's failure to produce an affidavit from an expert in opposition to the motion.

It is fundamental that a motion for summary judgment should be granted only if the pleadings, depositions and admissions on file show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law. *R.* 4:46–2; *Judson v. Peoples Bank & Trust Co. of Westfield,* 17 *N. J.* 67, 73–75 (1954). The moving papers and pleadings are considered most favorably for the party opposing the motion and all doubts are resolved against the movant. *Ruvolo v. American Cas Co.,* 39 *N. J.* 490, 499 (1963). It is the movant's burden to exclude any reasonable doubt as to the existence of a genuine issue of material fact. *United Advertising Corp. v. Metuchen,* 35 *N. J.* 193, 196 (1961).

 Our review of the record in the light of these principles satisfies us that summary judgment should not have been granted. The issue before us is not whether plaintiff can ultimately prevail; it is simply whether there are allegations in the answers to interrogatories which, if supported at trial by credible and competent evidence, would present jury issues as to defendant's negligence. Defendant has not demonstrated that such a showing is impossible, nor that such proofs, if presented, would as a matter of law still not establish a cause of action Cf. *Bonnett v. State,* 126 *N. J. Super.* 239, 244–245 (App. Div. 1974). *Snell v. Murray,* 121 *N. J. Super.* 215 (App. Div. 1972), is distinguishable on its facts.

Reversed and remanded for a plenary trial.