396 A.2d 467

**Charles S. EVERETTE, Sr., Administrator of the Estate of Charles S. Everette, Jr., Deceased**

v.

**CITY OF NEW KENSINGTON, a Municipal Corporation, Appellant.**

Superior Court of Pennsylvania.

Argued April 11, 1978.

Decided Dec. 28, 1978.

Chester S. Fossee, Pittsburgh, for appellant.

Daniel M. Berger, Pittsburgh, for appellee.

Before JACOBS, President Judge, and HOFFMAN, CERCONE, PRICE, VAN der VOORT, SPAETH and HESTER, JJ.

PER CURIAM:

The six Judges who decided this appeal being equally divided the judgment is affirmed.

SPAETH, J., files an opinion in support of affirmance in which JACOBS, President Judge, and CERCONE, J., join.

PRICE, J., files an opinion in support of reversal in which VAN der VOORT and HESTER, JJ., join.

HOFFMAN, J., did not participate in the consideration or decision of this case.

OPINION IN SUPPORT OF AFFIRMANCE

SPAETH, Judge:

The opinion in support of reversal is unwarranted both in law and on the facts.

–1–

In defining the legal issue presented by this case the opinion in support of reversal supposes that there are two standards of care: that of "reasonable care", and that of "extraordinary care". So supposing, the opinion asks, "By which of these two standards should the police officer's conduct here be judged?" And it answers, "By the standard of reasonable care." But there are not two standards. There is only one—that of "reasonable care." And of course the police officer's conduct is to be judged by that standard. The question is, What does "reasonable care" *mean*?

By itself, "reasonable care" is so abstract, so absolute, a term as to be meaningless. It must therefore always

be defined in light of the particular circumstances. *See* Restatement of Torts (Second) § 283 (1965). When the circumstances include possession of a loaded firearm, the person in possession of the firearm must exercise extraordinary care not to injure or kill someone with it. In other words: In deciding whether a person in possession of a loaded firearm has exercised "reasonable care", we must ask whether the person exercised "extraordinary care"; for someone in possession of a loaded firearm, "extraordinary care" *is* "reasonable care."

That this is the law has long been settled. An early statement by the Supreme Court appears in *Fredericks v. Atlantic Ref. Co.,* 282 Pa. 8, 127 A. 615 (1925):

> Negligence is absence or want of care under the circumstances. A higher degree of care is required in dealing with a dangerous agency than in the ordinary affairs of life, which involve little or no risk. No absolute standard can be fixed by the law, but every reasonable precaution suggested by experience and the known danger ought to be taken: *Koelsch v. Philadelphia Company,* 152 Pa. 355, 362, 25 A. 522. See *Shirey v. Consumers' Gas Co.,* 215 Pa. 399, 64 A. 541, as to the application of the rule, and *Gudfelder v. Pittsburgh, Cincinnati, Chicago and St. Louis Ry. Co.,* 207 Pa. 629, 57 A. 70, as applying to the facts in the present case.

*Id.,* 282 Pa. at 13–14, 127 A. at 616.

An even earlier statement, by this court, appears in *Knasiak v. Rambo,* 57 Pa.Super. 8, 12 (1914):

> Argument is not necessary to show that loaded firearms are dangerous and that a rifle having the capacity to inflict injury at a distance of a mile or a mile and a half from the place where it is discharged is more than ordinarily dangerous. The person using such a weapon is bound to a high degree of care to prevent injuries to others. All the cases hold a strict rule of accountability for the want of extraordinary care in the use of firearms. The law on the subject was thus stated in *Welch v. Durand,* 36 Conn. 182: "Shooting at mark is lawful but

not necessary and may be dangerous and the law requires extraordinary care to prevent injury to others; and if the act is done where there are objects from which the balls may glance the act is wanton, without due care and grossly negligent." In the same case it was held that it is immaterial that the injury was unintentional and that the ball glanced from the intended object. The same rule is supported in *Moebus v. Becker,* 46 N.J.L. 41; *Bullock v. Babcock,* 3 Wend. 391; *Benson v. Ross,* [143 Mich. 452] 106 N.W.Repr. (Mich.) 1120; Sherman & Redfield on Negligence, sec. 686; *Hankins v. Watkins,* 77 Hun, 360 [28 N.Y.S. 867].

The Supreme Court collected the cases, including *Fredericks* and *Knasiak,* in *Kuhns v. Brugger,* 390 Pa. 331, 338, 135 A.2d 395, 400 (1957), where it said:

Brugger's contention that he is entitled to judgment n. o. v. because of the lack of sufficient evidence of negligence on his part is clearly untenable. This Court in *Fredericks v. Atlantic Refining Co.,* 282 Pa. 8, 13, 127 A. 615, set forth the required rule of conduct when dealing with *any* dangerous agency: "A higher degree of care is required in dealing with a dangerous agency than in the ordinary affairs of life or business, . . . every reasonable precaution suggested by experience and the known danger ought to be taken . . ." See also *Maternia v. Pa. R.R. Co.,* 358 Pa. 149, 56 A.2d 233; *Summit Hotel Company v. National Broadcasting Company,* 336 Pa. 182, 8 A.2d 302; *Konchar et al. v. Cebular,* 333 Pa. 499, 3 A.2d 913. Any loaded firearm, including a pistol, is a highly dangerous instrumentality and, since its possession or use is attended by extraordinary danger, any person having it in possession or using it is bound to exercise extraordinary care. A person handling or carrying a loaded firearm in the immediate vicinity of others is liable for its discharge, even though the discharge is accidental and unintentional, provided it is not unavoidable: *Lindh v. Protective Motor Service Co., Inc.,* 310 Pa. 1, 4, 164 A. 605; *Winans v. Randolph,* 169 Pa. 606, 32 A. 622;

*Knasiak v. Rambo*, 57 Pa.Super. 8; *Gaussman v. Philadelphia & Reading Railway Co.*, 55 Pa.Super. 542.

It was from this passage that the trial judge read, when instructing the jury in the present case.

■ The opinion in support of reversal by way of distinguishing *Kuhns,* says that "the Supreme Court has imposed the higher standard [of "extraordinary care"] in situations in which a civilian possesses a firearm [citing *Kuhns*]". Opinion in Support of Reversal at 4. But this statement is unacceptable. It depends upon, and echoes, the mistaken supposition that there *is* a "higher standard" of "extraordinary care", in contrast to a lesser standard of "reasonable care." As *Kuhns* and the cases it cites hold, there is no such hierarchy of standards; to repeat: for a person who possesses a loaded firearm, "extraordinary care" is "reasonable care". Besides, what does the reference to "a civilian" mean? Is a police officer not "a civilian"? Perhaps by "civilian" is meant "some one not trained in the use of firearms." If so, then, to be sure, a police officer is not "a civilian." But why should a civilian—some one *not* trained in the use of firearms—be held to a higher standard of care, while some one who *is* (or is supposed to be) trained in their use—a police officer—is held to a lesser standard? Is the "reasonable man" no longer to be judged by such special skills as he may have? *See* Restatement of Torts (Second) § 289; Prosser, Handbook of The Law of Torts, § 32 (West ed. 1971).[1] Are doctors, trained in the use of drugs, to be held to a lesser standard of care than "a civilian," not

---

1. It may be noted in passing that the cases cited by the opinion in support of reversal as having to do with police officers are all inapposite, for they all involved the question whether the police officer defendant had used such force as constituted a crime, not civil negligence. *Commonwealth v. Micuso,* 273 Pa. 474, 117 A. 211 (1922) (involuntary manslaughter); *Shovlin v. Commonwealth,* 106 Pa. 369 (1884) (assault and battery); *Commonwealth v. Smythe,* 245 Pa.Super. 75, 369 A.2d 300 (1976) (assault and battery); *Commonwealth v. Duerr,* 158 Pa.Super. 484, 45 A.2d 235 (1946) (involuntary manslaughter) If one's conduct *does* constitute a crime, it may be negligence. But to suggest, as the opinion in support of reversal does, that if one's conduct does *not* constitute a crime, it *cannot* be negligence, is a *non sequitur,* and is not the law.

trained in their use? *See Incollingo v. Ewing*, 444 Pa. 263, 282 A.2d 206 (1971); *Collins v. Hand*, 431 Pa. 378, 246 A.2d 398 (1968); *Ragan v. Steen*, 229 Pa.Super. 515, 331 A.2d 724 (1974). The opinion in support of reversal I submit, has its (nonexistent) hierarchy of standards upside down.

This inversion is the more unfortunate since in accomplishing it the opinion in support of reversal has ignored authority, cited to us by appellee, that is on point. In *Davis v. Hellwig*, 21 N.J. 412, 122 A.2d 497 (1956), the New Jersey Supreme Court had to decide the same issue we must decide. A police officer, trying to catch a fleeing thief, shot at the thief's leg. He missed, and hit a pedestrian, who sued him for negligence. The New Jersey Supreme Court, in an opinion by BRENNAN, J., later Mr. Justice BRENNAN of the United States Supreme Court, considered the officer's right to shoot, and concluded that since the fleeing thief had committed a "high misdemeanor"—equivalent to a common law felony—it "cannot be said that defendant's act in shooting was without lawful justification." 21 N.J. at 418, 122 A.2d at 500. The Supreme Court recognized, however,[2] that this conclusion did not end its inquiry. The officer had shot at the fleeing thief in a very narrow street and without looking out for pedestrians. The question, therefore, was: Even though the shooting was justified, was it negligent? The Supreme Court held that this question should be submitted to the jury, "under instructions consistent with this opinion." 21 N.J. at 419, 122 A.2d at 501. In explaining how those instructions should define the standard of reasonable care required of the officer, the Supreme Court said:

> The Appellate Division's opinion rightly states that "Courts have universally regarded loaded firearms as dangerous instruments and have ascribed an elevated degree of reasonable care and caution to be exercised in their use." 37 N.J.Super. [569] 573, 118 A.2d [83] 85. In his notable opinion in *Palsgraf v. Long Island R. Co.*, 248 N.Y. 339, 162 N.E. 99, 100, 59 A.L.R. 1253 (Ct.App.1928), Mr.

2. As the opinion in support of reversal here does not. *See* note 1, *supra*.

Justice Cardozo said that "some acts, such as shooting are so imminently dangerous to any one who may come within reach of the missile however unexpectedly, as to impose a duty of prevision not far from that of an insurer." Our own decisions are to the same effect. In *Moebus v. Becker*, 46 N.J.L. 41, 44 (Sup.Ct.1884), for example, it was set down that, "As firearms are more than ordinarily dangerous when loaded, those who handle them are bound to use more than ordinary care to prevent injury to others."

No exception from this strict rule of accountability for want of extraordinary care in the use of firearms is made in favor of a police officer whose act of shooting causes harm to innocent bystanders.

21 N.J. at 415, 122 A.2d at 498.[3]

*See also Steward v. Borough of Magnolia*, 134 N.J.Super. 312, 340 A.2d 678 (1975).

Thus in *Davis v. Hellwig, supra*, the New Jersey Supreme Court defined reasonable care just as the Pennsylvania Supreme Court did in *Kuhns v. Brugger, supra* : for someone in possession of a loaded firearm—*whoever* that someone may be, police officer or otherwise—"reasonable care" means "extraordinary care."

–2–

 If one applies the standard of *Kuhns v. Brugger, supra*, and of the other cases just discussed, to the facts of the present case, it will be seen that the jury was amply justified in returning its verdict for appellee. In stating the facts we must view the evidence in the light most favorable to appellee as the verdict winner.[4] *See Rubinstein v. J. E. Kunkle Co.*, 244 Pa.Super. 474, 368 A.2d 819 (1976); *Gordan v. Trovato*, 234 Pa.Super. 279, 338 A.2d 653 (1975). Viewed in this light, the facts are as follows.

**3.** The New Jersey Supreme Court's citation of *Moebus* should be noted. This court also cited *Moebus*, in *Knasiak*; and the Supreme Court of Pennsylvania cited *Knasiak* in *Kuhns*.

**4.** Which the opinion in support of reversal here does not do. *See* Majority slip opinion at 468.

On July 22, 1974, at approximately 7:45 p. m., six of appellant's police officers, including Officer Harley Cheatham, stopped a car that was suspected of having been involved in an armed robbery in an adjoining township. (N.T. 435) Four young men were in the car; appellee's decedent was one of them. (N.T. 435) The officers, guns drawn, ordered the young men out of the car. (N.T. 83) In response to further orders, appellee's decedent went to the back of the car and lay face down on the pavement, in a spread-eagled position, and another of the young men did the same, while the other two both turned, facing the car, with their hands on the roof. (N.T. 448–449) None of the young men offered any resistance at any time. While thus lying on the pavement, appellee's decedent was shot by Officer Cheatham. (N.T. 36–38) The bullet did not richochet but hit appellee's decedent directly, entering the lower part of his neck and exiting through his face near his lips. (N.T. 96–98)

Officer Cheatham testified that when his gun—a .357 Magnum revolver—went off, he was frisking one of the young men, named Tyler, who was standing facing the car with his hands on the roof; the officer said he was frisking Tyler's rear pocket with his left hand while he held his cocked revolver in his right hand, that he found a gun in Tyler's pocket, and that when he tried to remove it, his own gun fired. (N.T. 510)

Because Officer Cheatham's gun was cocked, it could be fired by minimal pressure on the trigger—about 25% of the pressure needed to fire it uncocked. (N.T. 185–187) Proper police practice, as specified in the manuals of the Pennsylvania State Police and the National Rifle Association, is that a police officer is never to cock his gun while frisking or searching a prisoner; he is only to cock it immediately before firing it. (N.T. 175–180, 468–470)

Accordingly, even if the jury accepted Officer Cheatham's testimony, its verdict was warranted. In fact, however, there was no need for the jury to accept the officer's testimony, for a disinterested eye witness answered, "Not

that I remember, no," when asked whether Officer Cheatham was frisking a suspect when his gun fired. (N.T. 39); to the contrary, the witness said, the officer was near the left rear door of the car, facing the two men lying face down on the pavement, his gun pointing toward the front. (N.T. 27) This testimony was corroborated by the Coroner's pathologist, who testified that the angle of the bullet that killed appellee's decedent was such that the person holding the gun from which the bullet was fired would have been standing above and behind appellee's decedent as he lay face down on the pavement. (N.T. 109–116) In addition, on cross-examination the police sergeant who was the ranking officer on the scene conceded that when he testified at the Coroner's inquest, he said that upon turning immediately after the shot, he saw Tyler spread-eagled on the pavement (N.T. 473–475)—in other words, not in the process of being frisked by Officer Cheatham. It is therefore possible, and indeed it seems probable, that the jury rejected Officer Cheatham's testimony and found that when the officer shot and killed appellee's decedent, he was no longer frisking Tyler but had walked to the rear of the car, and was simply standing around, needlessly pointing his cocked revolver at appellee's decedent, who lay face down on the pavement.

The judgment should be affirmed.

JACOBS, President Judge, and CERCONE, J., join in this opinion.

## OPINION IN SUPPORT OF REVERSAL

PRICE, Judge:

This case arises out of two separate counts, one by appellee for the wrongful death of his son, Charles S. Everette, Jr., and the other as a survival action by appellee as the administrator of the estate of Charles S. Everette, Jr. In reviewing the charge to the jury, we conclude that the trial judge improperly instructed the jury on the standard of care demanded of police officers in effecting an arrest. The facts adduced at trial were as follows.

On July 22, 1974, at 7:02 p. m., a call was received by the New Kensington Police Department informing them that an armed robbery had occurred in Allegheny Township involving four (4) youths in a gold Lincoln Continental. A short time later, six officers from the New Kensington Police Department sighted the vehicle, approached it with their weapons drawn and ordered the suspects out of the car. One of the officers, Officer Harley Cheatham, approached the vehicle with the hammer on his revolver cocked to the first position. Officer Cheatham went to the left door of the Lincoln and ordered the driver, Tyler, out of the vehicle. Tyler was ordered to place his hands on the roof of the vehicle and Officer Cheatham commenced a pat-down search during which he discovered a revolver in Tyler's left rear pocket. As Officer Cheatham attempted to extract the revolver, Tyler moved, and, when he pulled at Tyler, Officer Cheatham's revolver, which was still cocked and being held in his right hand, discharged striking the decedent, Charles S. Everette, Jr. Everette was one of the four suspects in the Lincoln, and at the time of the shooting, was to the right of Cheatham, being frisked by one of the other officers.

Appellee brought suit against appellant alleging vicarious responsibility for the negligent action of its employees in effecting the arrest.[1] After trial, the jury rendered a verdict for appellee in the amount of seventy-five thousand dollars ($75,000.00) in the survival action and twenty-five thousand dollars ($25,000.00) in the wrongful death action. Appellant appealed, alleging various points of error.[2]

1. Officer Cheatham testified that he had not received any formal training in the handling of firearms or proper arrest procedures. All of his training had been received on the job, working with veteran officers. (N.T. 514–15). In addition, plaintiff's testimony established that normal police procedures as set forth in the Pennsylvania State Police Manual provided that a police officer is never to cock his weapon while frisking or searching a prisoner. (N.T. 79).

2. In addition to the alleged error discussed *infra*, appellant contends that the trial judge committed the following additional errors: (1) he permitted the jury to view the sweater worn by the decedent on the night of the shooting; (2) he permitted an economist to testify regarding the decedent's earning potential; and (3) he refused to

Among the assignments of error is appellant's contention that the trial judge improperly granted appellee's point four for charge in which the jury was instructed regarding the standard of care to be exercised by Officer Cheatham and the other officers in effecting the arrest. During his primary charge to the jury, the trial judge instructed that the officers were to be adjudged by the usual negligence standard, and "[t]hat negligence is the absence or want of that due care which a *reasonable* man would exercise under the circumstances." (N.T. 645–646) (emphasis added). After completing his instruction, however, the trial judge granted appellee's point four for charge and informed the jury:

". . . A revolver is a dangerous agency. When dealing with any dangerous agency, *a higher degree of care is required* than in the ordinary affairs of life or business. Every reasonable precaution suggested by experience and the known danger ought to be taken. Any loaded firearm, including a pistol, is a highly dangerous instrumentality and, since its possession or use is attended by extraordinary danger, any person having it in possession or using it is bound to exercise *extraordinary care*. A person handling or carrying a loaded firearm.in the immediate vicinity of others is liable for its discharge, even though the discharge is accidental and unintentional, provided it is not unavoidable." (N.T. 662–63) (emphasis added).

In light of the inconsistency in these two explanations of the proper standard of care, and because appellee's point four imposes an excessive standard of care on appellant's policemen (indeed, any policemen), we would reverse the judgment of the lower court and remand for a new trial.

Although not contested by appellee, it should initially be established whether appellant's employees were acting in a

instruct the jury to reduce the award in the amount decedent would have provided for a wife and children. Because we would reverse the judgment of the lower court based upon the erroneous point for charge regarding the standard of care to be applied to police officers, we would not address the merits of these additional contentions at this time.

proper manner in approaching the Lincoln with their weapons drawn. Under the law of Pennsylvania, a police officer "is justified in the use of any force which he believes to be necessary to effect the arrest," 18 Pa.C.S. § 508(a)(1), and deadly force may be employed if the officer believes his life to be in danger or to prevent the escape of a suspect who has committed or attempted to commit a forcible felony.[3] 18 Pa.C.S. § 508(a)(1)(i), (ii). In addition, the seriousness of the arrest situation and the attendant circumstances may justify an officer in drawing his gun to effect an arrest and may determine the reasonableness of the force employed. *Commonwealth v. Ferraro*, 237 Pa.Super. 268, 275, 352 A.2d 548, 551 (1975). Thus, in light of the information available to appellant's police employees that the occupants of the Lincoln were suspected of armed robbery, the officers could have reasonably believed the suspects were armed and dangerous. They were, therefore, justified in approaching the vehicle with their weapons drawn. Still to be determined, however, is the applicable standard by which the actions of the officers are to be adjudged.

In reviewing the propriety of the police actions in effecting an arrest, Pennsylvania courts have applied the reasonable man standard, and have established the general rule that an officer may use such force as is reasonably necessary to consummate an arrest. *Commonwealth v. Micuso*, 273 Pa. 474, 477, 117 A. 211, 212 (1922); *Commonwealth v. Smythe*, 245 Pa.Super. 75, 83, 369 A.2d 300, 304 (1976); *Commonwealth v. Duerr*, 158 Pa.Super. 484, 491–92, 45 A.2d 235, 238–39 (1946). A police officer is only liable if the force employed in effecting the arrest is unreasonable. *Sholvin v. Commonwealth*, 106 Pa. 369, 371 (1884).

Since appellant's employees were entitled to use reasonable force to effect the arrest, we would hold that their

---

**3.** In this case the suspects were being arrested for armed robbery, which under 18 Pa.C.S. § 3701 would constitute a forcible felony. *See also Commonwealth v. Chermansky*, 430 Pa. 170, 173–74, 242 A.2d 237, 240 (1968), wherein it was established that an ordinary citizen may employ deadly force to prevent the escape of one suspected of having committed a robbery.

actions should be adjudged by the usual negligence standard of reasonable care. The more burdensome standard of "extraordinary care" utilized in appellee's point four for charge is a clear departure from the usual standard employed in arrest situations. Although the supreme court has imposed the higher standard in situations in which a civilian possesses a firearm, *see Kuhns v. Brugger*, 390 Pa. 331, 344, 135 A.2d 395, 403 (1957); *Lindh v. Protective Motor Serv. Co.*, 310 Pa. 1, 164 A. 605 (1933), we see no reason to depart from the usual rules applicable to police arrest situations. The imposition of the higher standard will only serve to inhibit the police from the safe and efficient enforcement of their duties. Therefore, we would reverse the judgment entered in the court below, and remand for a new trial during which the jury would be instructed to assess the propriety of the officers' actions according to the reasonable man standard as detailed in the trial court's original charge to the jury.

VAN der VOORT and HESTER, JJ., join in this opinion.